COLLIER *v.* TOWNSHIP BOARD OF ST. CHARLES.

1. TOWNSHIPS—BONDS—PAYMENT—EVIDENCE—ADMISSIBILITY.
   In an action brought in 1904 on a township bond, issued for volunteer bounty fund in 1864 and payable in one year, it appeared that the supervisor and clerk who signed it were dead, that the township records, except a few papers kept in a safe, had been destroyed by fire in 1882, and that two former officers of the township who had had access to its papers had had possession of the bond and demanded payment on it. *Held,* that whatever such officers did in connection with the bond was admissible as tending to show that it had been paid and had been wrongfully taken from the possession of the township by one of them.

2. CERTIORARI—REVIEW—QUESTIONS CONSIDERED.
    The office of the writ of certiorari is to review questions of law, the facts not being reviewable in such proceeding.

3. TOWNSHIPS—BONDS—PAYMENT—EVIDENCE—ADMISSIBILITY.
    On certiorari to review refusal by the circuit court to direct a mandamus to township officers compelling them to pay a township bond, evidence examined, and *held*, sufficient to support the finding that the bond had been paid.

Certiorari to Saginaw; Gage (William G.), J. Submitted June 5, 1906. (Calendar No. 21,673.) Decided April 2, 1907.

Mandamus by George W. Collier to compel the township board of St. Charles township to audit and allow the payment of a bond. There was an order denying the writ, and relator brings certiorari. Affirmed.

*F. E. Emerick*, for relator.

*Snow & Snow*, for respondent.

McALVAY, C. J. This is a certiorari to review mandamus proceedings had before the circuit court for Saginaw county. On December 23, 1904, relator applied to said court for a writ of mandamus to compel respondent township board to audit, allow, and issue to him a proper order to pay a certain bond for volunteer bounty fund issued to him September 5, 1864, for the sum of $300, due in one year, with interest at 10 per cent. per annum, upon which bond interest was indorsed paid in full to December 1, 1865. Respondent answered said petition, and, among other things, denied liability, and alleged that said bond had been paid in full, and also pleaded the statute of limitations. Relator joined issue by a replication, and upon his demand issues of fact were framed, against the objection in writing of respondent. These issues were tried before a jury, which rendered a verdict on all of them against the relator. The court afterwards entered a judgment denying the writ of mandamus, and dismissed the proceedings, with costs to respondent.

The two material questions discussed in the brief of relator are:

1. That there was no evidence properly in the case showing payment of the bond, and the court should have found for relator as a matter of law.

2. That the statute of limitations cannot be pleaded against this bond.

There is no dispute in the case but that in the year 1864 certain volunteer bounty fund bonds were issued to relator by this township, for cash paid by him, and among them was the bond in question. As far as the disputed facts of the case are concerned, the material one was whether this bond was taken up and paid by the township. The supervisor and township clerk who signed the bonds are dead. All the old books and records of the township, except certain vouchers and papers kept in a safe, were destroyed by fire in the year 1882. About 40 years had expired after the bond came due before relator made claim in August, 1904, that it had not been paid. Two other parties had claimed to own it shortly before that time, both of whom had been officers of the township, with opportunity to get access to the township papers. Both of these parties filed claims for it, and demanded payment. They were Horace W. Tinker, former deputy town clerk, and George Goodrich, former town clerk, also supervisor in 1884 and township treasurer in 1888 and 1889, who, while in office, used his own safe and kept the files and records of the township in it.

The bond first appeared in the hands of Goodrich in April, 1903. He showed it to William Rowlin, justice of the peace of the township, saying to him that it didn't show that it had been paid, and that he found it in cleaning out his safe when moving. He also showed it to the supervisor, claiming that he had found it among his "plunder" when he moved, and said that some day he would collect some money on it. About two weeks later Tinker filed verified claim as owner of the bond, and demanded payment, which was refused.

In January, 1904, Goodrich made a similar claim and demand, and payment was refused. In August, 1904, relator presented his claim with like result. None of these parties appeared before the township board and urged their claims, and the bond was never presented to the board. Ample time elapsed between the filing of these claims and action taken thereon by the board to allow these parties a hearing if they desired. In the cases of Tinker and Goodrich this time was 60 days each, and in relator's case 14 days. How Tinker got the bond does not appear. Relator received notice of its existence from Goodrich. He instituted these mandamus proceedings in December, 1904.

On the hearing of the case he testified, among other things, that he bought eight of these bonds, two for his mother-in-law, and six for himself; that the six were all $300 bonds; that he brought suit on one of them; that the rest were paid; that he missed this bond about 1870, when he lost it; that for 30 years he had hardly thought of this bond; that no one but he ever owned it, and it had never been paid; that it was brought to his attention by Goodrich, whom at that time he did not know, and did not know where Goodrich got it; that he did not know Tinker, and never saw him; never sold the bond to Tinker or Goodrich, and never knew that either of them presented it for payment; that Goodrich did not have the bond with him either time he came to see relator. He further testified: "I haven't got the bond now. Goodrich has it. I considered it out of my possession and couldn't hold it;" that he was not instrumental in starting the suit; "that was done by Goodrich;" that he never paid any of the expense of the suit, and had never been called upon to do so; that he never took any legal advice in regard to the bond after he lost it, and made no claim in regard to it, or attempt to collect it for all these years, or notified the township of his loss. He did not produce Goodrich or Tinker as witnesses.

The following are the issues of fact framed by the court

upon motion of the relator, and the answers of the jury thereto:

"1. Was the bond described in said petition issued by respondent township of St. Charles?

"*A.* Yes.

"2. Is relator George W. Collier, the owner of said bond and legally in possession thereof?

"*A.* No.

"3. Has said bond, or any part thereof, been paid?

"*A.* Yes.

"4. Was a payment of the interest upon said bond made as purporting to be indorsed thereon?

"*A.* Yes.

"5. Was the obligee named in said bond ever engaged in the military or naval service of the United States in any rank or capacity?

"*A.* No."

Is relator's contention correct that as a matter of law the court should have found in his favor? The evidence objected to, and like evidence which would come under the same objection, was offered as tending to show that the bond in question had been paid and delivered to the township when the other bonds were paid, and that it was wrongfully taken from the possession of the township by Goodrich. Whatever Goodrich and Tinker did in connection with this bond was material as tending to show that fact. We think it was proper for the purpose for which it was offered. The office of the writ of certiorari is to try questions of law. The facts are not reviewable. An examination of the testimony which is all returned shows that there was evidence properly in the case to be submitted to the jury and to be considered by the court tending to support the findings of the jury and the judgment entered.

It is not necessary to consider other questions.

The judgment is affirmed.

GRANT, BLAIR, MONTGOMERY, and OSTRANDER, JJ., concurred.