*In re* PAYNE

(PAYNE v MUSKEGON)

Docket No. 94486. Argued October 5, 1993 (Calendar No. 6). Decided March 29, 1994.

Marcia Payne appealed the termination of her employment with the City of Muskegon to the Muskegon Civil Service Commission, alleging that termination was too harsh a penalty for failing to complete certain work, despite being warned to do so. The commission denied her appeal on the basis its rule X, § 3(i), which provides that failure to perform work after being warned is grounds for immediate discharge. Thereafter, she petitioned the Muskegon Circuit Court for an order of superintending control. The court, Ronald H. Pannucci, J., ruled that there was not competent, material, and substantial evidence to support the termination and remanded the case for imposition of a less severe penalty. The Court of Appeals, FITZGERALD, P.J., and HOOD and CAVANAGH, JJ., reversed in an opinion per curiam, holding that the proper standard of review was any competent evidence to support the findings of the commission, and remanded the case to the circuit court (Docket No. 132854). The parties appeal.

In an opinion by Justice BOYLE, joined by Chief Justice CAVANAGH, and Justice BRICKLEY, and an opinion by Justice RILEY, joined by Justice GRIFFIN, the Supreme Court *held:*

A court, in reviewing the decision of an administrative agency, such as a municipal civil service commission should accept the agency's findings of fact if they are supported by substantial evidence.

1. Substantial evidence is the amount of evidence a reasonable mind would accept as sufficient to support a conclusion. While it consists of more than a scintilla of evidence, it may be substantially less than a preponderance. In practice, however, the formula cannot be applied mechanically so as to take the place of analysis by the court. A court has expertise in adjudication—determining disputed facts. A municipal civil service board has expertise in determining job requirements for city employees. The role of a municipal civil service commission is to decide what qualifications and behavior a city will require of

its employees and how much security it will promise them. The role of the reviewing court is to ensure that the city's employees receive what they were promised by reviewing whether, in a given case, there was substantial evidence to support the commission's factual determinations.

2. In this case, the record of the commission's hearing contained sufficient evidence to support the plaintiff's discharge. The commission found that the plaintiff violated its rule regarding the performance of assigned work. The circuit court should have accepted that finding because the plaintiff conceded that she had not performed the work at issue. In addition, because determination of the appropriate penalty did not involve questions of fact, it is not subject to substantial evidence review. Michigan law does not require a city to retain such an employee.

Affirmed in part, reversed in part, and remanded.

Justice BOYLE, joined by Chief Justice CAVANAGH, and Justice BRICKLEY, further stated that because the common-law substantial evidence test satisfies the minimum constitutional requirements for judicial review of administrative agency findings, it is not necessary to reach the question whether Const 1963, art 6, § 28 applies.

Decisions of municipal civil service commissions are reviewed through original actions for superintending control. Superintending control is available only where, as in this case, the party seeking the order does not have another adequate remedy such as an appeal. The standard for issuing an order of superintending control depends on the type of suit involved. Because the common-law standard of review of the factual findings of municipal civil services agencies is the substantial evidence test, and because the scope of review for superintending control was not altered when it replaced the common-law extraordinary writs, circuit courts should assume superintending control over a municipal civil service commission where the record does not contain substantial evidence to support its findings.

Justice RILEY, joined by Justice GRIFFIN, concurring in part and dissenting in part, further stated that a proper construction of Const 1963, art 6, § 28 reveals that the substantial evidence standard is applicable in this case. The standard is not satisfied by the review entailed under the traditional writ of certiorari.

The Muskegon Civil Service Commission is an administrative agency that affects private rights by exercising quasi-judicial powers. As an agency, it is subject to direct review by the

courts pursuant to Const 1963, art 6, § 28, as provided by law. Such review has been provided by the Legislature through writs of superintending control. Because the standard of review is modified by art 6, § 28, the substantial evidence standard applies to the city.

Justice LEVIN, joined by Justice MALLETT, dissenting, stated that a decision to discharge a civil service employee after a hearing is subject to judicial review, pursuant to Const 1963, art 6, § 28, to determine whether it is supported by competent, material, and substantial evidence on the whole record, and not merely to determine whether there is any evidence to support the decision.

A municipal civil service commission is an administrative agency existing under the constitution or by law. Its final decisions, findings, rulings, and orders are judicial or quasi-judicial and affect private rights or licenses within the meaning of Const 1963, art 6, § 28. They therefore are subject to direct review by the courts, although the Legislature has not provided for judicial review.

As provided in the constitution, such review must include, as a minimum, the determination whether such final decisions, findings, rulings, and orders are authorized by law, and, where a hearing is required, must include as a minimum whether the decision, findings, rulings, and orders are supported by competent, material, and substantial evidence on the whole record. Therefore, the circuit court did not err in reviewing the decision of the Muskegon Board of Civil Service Commissioners to determine whether there was competent, material, and substantial evidence on the whole record to support the decision to discharge the plaintiff, and not solely to determine whether there was any competent evidence to support the decision. Nor did the court err in determining that there was not sufficient evidence to justify the discharge decision and in remanding for imposition of a lesser penalty.

Although the Court of Appeals observed correctly that a writ of superintending control is the means by which a circuit court exercises its power of judicial review of a decision of an administrative tribunal where an appeal is not specifically provided for by statute, it erred in concluding that, because superintending control replaces certiorari, and issuance of a writ of superintending control may be extraordinary, judicial review is always limited to questions of law and, hence, to a determination whether there is any competent evidence to support a finding of fact.

An agency exists under the constitution or by law at least

where the constitution or an act of the Legislature provides for a governmental function to be discharged by the agency. The constitutional standard governs judicial review where there are provisions for a hearing respecting the exercise of the governmental function and for decisions, findings, rulings, or orders following the hearing that are judicial or quasi-judicial and affect private rights or licenses.

Both the constitution and the Home Rule Act authorize local units of government to provide for a merit or civil service system for their employees. It is clear that administering a municipal civil service commission is a governmental function authorized and provided for by both the constitution and by law, and that a local civil service commission is an agency existing under the constitution or by law within the meaning of art 6, § 28. The decision of the Muskegon Board of Civil Service Commissioners sustaining the disciplinary action against the plaintiff was a quasi-judicial decision affecting her private rights under the Muskegon civil service system.

The lead opinion's holding that the penalty assessed by the board is not subject to substantial evidence review for the reason that the determination of the appropriate penalty did not involve any questions of fact because the commission's rules allow it to terminate the plaintiff under the facts she conceded, ignores that the constitutional standard, competent, material, and substantive evidence on the whole record, applies not only to findings of fact, but also to *decisions,* rulings, and orders. Contrary to the suggestion in the lead opinion, federal courts review an agency's decision discharging an employee to determine whether the punishment was proportionate. In three cases decided after the adoption of the 1963 Constitution, the Supreme Court, without referring to art 6, § 28, reversed *decisions* of a municipal civil service commission sustaining the discharge of employees because it found that the penalty of discharge was disproportionate to the offense.

193 Mich App 620; 484 NW2d 759 (1992) affirmed in part and reversed in part.

*Pinsky, Smith, Fayette & Hulswit* (by *H. Rhett Pinsky*) for the plaintiff.

*Parmenter O'Toole* (by *John C. Schrier*) for the defendants.

BOYLE, J. This case presents the question of the

standard of review of the factual findings of a municipal civil service commission. We hold that a reviewing court should accept findings supported by substantial evidence. Because the common-law substantial evidence test satisfies the minimum constitutional requirements for judicial review of administrative agency findings, we need not reach the question whether Const 1963, art 6, § 28 applies.[1] The decision of the Muskegon Civil Service Commission was supported by substantial evidence. Accordingly, we remand the case to the circuit court for entry of judgment in favor of the defendant.

I

The appellant, Marcia Payne, worked for the City of Muskegon in several clerical and administrative positions. In December, 1988, she transferred to the position of administrative secretary for the city's personnel director, Truman Forest, at the request of Mr. Forest.

The personnel department records information about city employees and their status in four cross-referenced files, each having a different purpose: the employee's personnel file; a quick-reference index consisting of a 3 by 5 card for each employee

[1] See *Lissee v Secretary of State,* 388 Mich 32, 40-41; 199 NW2d 188 (1972). The wisdom of this rule is underscored by the unique conclusion of the concurring opinion that "[t]he failure of the Legislature to implement the program is simply unconstitutional inaction." *Post* at 717. There may be cases in which this Court has so held. However, no authority is cited for the proposition. If the Legislature exempted an agency from the coverage of art 6, § 28, the constitutional question would be presented. However, given that it is unnecessary to answer this question and that neither party has argued this position, to decide that this Court may require legislators to vote for bills and the governor to sign them is inconsistent with our historic sensitivity to issues of separation of power. See, e.g., *Shavers v Attorney General,* 402 Mich 554, 638; 267 NW2d 72 (1978) (delaying the entry of an order for eighteen months so that the Legislature could correct constitutional defects in the no-fault act).

that does not contain all the information from the personnel file; the "brown book," organizing collective personnel actions taken by date; and the "grey book," containing special lists, such as department lists and equal opportunity lists. For example, the brown book would be consulted to respond to an inquiry regarding the number of employees who would be on vacation on a certain day, and the quick-reference index would be used to learn an employee's telephone number. In February, 1989, Forest gave Payne a document confirming that each new hiring or status change must be recorded in all four indexes.

On Friday, June 3, 1989, Forest returned to the office to discover several things amiss: promotional announcements that should have been posted on the bulletin board were not, a number of completed employment applications remained on Payne's desk rather than being locked away to protect their confidentiality, and a number of items from the April and May Muskegon Civil Service Commission meetings had not been filed and recorded. In an effort to correct these problems, Forest wrote the plaintiff a letter of reprimand detailing the assignments she had not completed, including the specific items from the minutes of the April and May commission meetings that had not been recorded. The letter cited the plaintiff for violating Rule X, § 3(i) of the Muskegon Civil Service Rules, and instructed her to schedule her work so that she could record the information from the minutes within seventy-two hours of each meeting.

Approximately a week later, under the assumption that the plaintiff had completed the assignments detailed in the June 5 letter, Forest decided that she had passed her probation period. In an addendum to her performance evaluation, he wrote that although Payne had been "quick to

grasp the overall 'flow' of the operation," and thus received satisfactory marks in most categories, her performance was lacking in two areas: proofreading and filing. Regarding the latter, Forest explained that "[p]roperly securing the records of the Civil Service department is our single most important task. The employees of the city must have confidence in our system and believe that our records are accurate and secure. You must commit yourself to doing this less-than-glamorous task in a timely and accurate manner."

Upon returning from vacation on July 10, Forest discovered several employment applications on Payne's desk. This discovery prompted him to check whether the plaintiff had completed filing the items listed in the June 5 warning letter. She had not. In addition, the plaintiff had not yet recorded many items from the June 26 meeting.

Payne returned from her own vacation on July 17, and told Forest that part-time employee Larry Townsend, not herself, was responsible for leaving the applications unsecured. After considering the entire situation, Forest decided to terminate the plaintiff's employment.

Payne appealed to the Muskegon Civil Service Commission. At the hearing, plaintiff submitted that termination was too harsh a penalty, but admitted that, as of July 17, she still had not performed some of the work she was warned about failing to complete in the June 5 letter. Specifically, plaintiff acknowledged that she had failed to enter items from April and May in the record reflecting collective personnel action by date and had not entered items from the June meeting in either that record or the employee quick reference index. The rules of the Muskegon Civil Service Commission provide that failure to perform work after being warned is a "Group 3 Offense," which

is grounds for immediate discharge.[2] The commission denied the plaintiff's appeal.

The plaintiff then petitioned the Muskegon Circuit Court for an order of superintending control. The circuit court reviewed the record of the hearing for competent, material, and substantial evidence, and ruled that there was insufficient evidence to support the plaintiff's termination. The court set aside the plaintiff's discharge and remanded the case to the commission to impose a less severe penalty.

The city appealed, arguing among other things that the circuit court applied the wrong standard of review. The Court of Appeals agreed and reversed in a per curiam opinion, holding that the proper standard was "any competent evidence to support the findings made below." 193 Mich App 620, 623; 484 NW2d 759 (1992). The Court remanded the case, instructing the circuit court not to substitute its judgment for the civil service commissioners' "[i]f there is any competent evidence on the record that the plaintiff, after a warning, failed to perform her work completely . . . ." *Id.* We granted leave. 442 Mich 925 (1993).

[2] The pertinent part of Rule X, § 3 reads:

The following, by way of example only and not as an exclusive list, are declared to be causes for disciplinary action or removal from the classified service of the City of Muskegon. Disciplinary action shall be imposed with respect to each of the groups of offenses listed:

* * *

Group 3 Offenses

* * *

i) After warning, incompetence, failure to perform work or duties completely and efficiently, or failure or inability to do the work fixed by the work standard in force.

The disciplinary action in this group shall be grounds for immediate discharge.

II

Decisions of municipal civil service commissions are reviewed through original actions for superintending control. See, e.g., *Beer v Frazier Civil Service Comm,* 127 Mich App 239, 243; 338 NW2d 197 (1983); *Rinaldi v Livonia,* 69 Mich App 58, 69; 244 NW2d 609 (1976). Superintending control is available only where the party seeking the order does not have another adequate remedy. MCR 3.302(B). An appeal would be an adequate remedy, and a complaint for superintending control must be dismissed when one is available. MCR 3.302(D)(2). Because the Legislature has not provided for appeal from municipal civil service boards, *Robertson v Detroit,* 131 Mich App 594, 597; 345 NW2d 695 (1983), review is by complaint for superintending control.

A

The standard for issuing an order of superintending control depends on the type of suit involved. Superintending control replaced the common-law extraordinary writs—"the writs of certiorari and prohibition and the writ of mandamus when directed to a lower court or tribunal."[3] MCR 3.302(C). See also Const 1963, art 6, § 13 ("The circuit court shall have . . . power to issue, hear and determine prerogative and remedial writs"). These writs were issued in different circum-

---

[3] For this reason, orders of superintending control granted pursuant to MCR 3.302 should not be confused with "the general supervisory superintending control over all courts given to the Supreme Court by art 6, § 4 of the 1963 Constitution or the supervisory and general control over inferior courts and tribunals within their respective jurisdictions in accordance with rules of the Supreme Court, given the circuit courts by art 6, § 13 of the 1963 Constitution." *Genesee Prosecutor v Genesee Circuit Judge,* 386 Mich 672, 680-681; 194 NW2d 693 (1972).

stances and according to different standards.[4] We
agree with the plaintiff that the common-law stan-
dard of review of the factual findings of municipal
civil service agencies is the substantial evidence
test.

Prior to the creation of superintending control,
Michigan courts reviewed the decisions of munici-
pal civil service boards through certiorari. See
*Detroit Public Welfare Comm v Detroit Civil Ser-
vice Comm,* 289 Mich 101, 106-107; 286 NW 173
(1939); *Schubert v Dearborn Civil Service Bd,* 311
Mich 553, 561; 19 NW2d 96 (1945); *O'Dell v Flint
Civil Service Comm,* 328 Mich 631, 636-637; 44
NW2d 157 (1950). Certiorari was the common-law
method of correcting errors of administrative
agencies. See, generally, *Town of Reading v Attor-
ney General,* 362 Mass 266; 285 NE2d 429 (1972);
*Rhodes v Woodstock,* 132 Vt 323; 318 A2d 170
(1974); *Park Hosp Dist v Larimer Co Dist Court,*
192 Colo 69; 555 P2d 984 (1976).

The writs were issued less frequently in criminal
cases than in civil cases. "A jurisdiction may ordi-
narily treat the writs as flexible devices allowing
review of a wide range of nonappealable orders,
but sharply restrict that flexibility in the context
of criminal cases." 3 LaFave & Israel, Criminal
Procedure, § 26.4(c), p 228. This principle is re-
flected in *In re People v Burton,* 429 Mich 133,
139; 413 NW2d 413 (1987), and *Genesee Prosecutor
v Genesee Circuit Judge,* 386 Mich 672; 194 NW2d
693 (1972). The trial court in *Burton* had granted
the defendant a new trial. The prosecutor sought
interlocutory review by asking the Court of Ap-

[4] The standard for mandamus is discussed in *Wiley v Allegan
Circuit Judge,* 29 Mich 487 (1874), and *Taylor v Ottawa Circuit Judge,*
343 Mich 440, 443-444; 72 NW2d 146 (1955). Prohibition is differenti-
ated from mandamus in *State ex rel Cincinnati Post v Hamilton Co
Court of Common Pleas,* 59 Ohio St 3d 103, 107; 570 NE2d 1101
(1991).

peals to issue a writ of certiorari. This Court, in
determining whether to intervene, instead applied
the standard traditionally associated with manda-
mus:[5] the writ should be issued only " 'if the
inferior tribunal, upon the record made, had juris-
diction, whether or not it exceeded that jurisdic-
tion and proceeded according to law.' " 429 Mich
139.

Unification of the writs under superintending
control did not change the scope of review.[6] *Drouil-
lard v Roseville*, 9 Mich App 239, 243; 156 NW2d
628 (1967); *Scallen v State Health Comm'r*, 376
Mich 64, 71; 135 NW2d 426 (1965) (SOURIS, J.,
dissenting). Instead, the purpose of acts that abol-
ished these classifications was, as eloquently ex-
plained by the Court of Appeals of New York, "to
wipe out technical distinctions which had been a
snare for suitors approaching the court for relief
and which, at times, hampered the court in grant-
ing relief for proven grievances." *Newbrand v
Yonkers*, 285 NY 164, 174; 33 NE2d 75 (1941). In
Michigan, the unification of these writs was like-
wise intended to "eliminate frequent mistakes in
the choice of remedies." *Lorland Civic Ass'n v
DiMatteo*, 10 Mich App 129, 137; 157 NW2d 1
(1968).

B

Given that the scope of review in complaints for

[5] The traditional standards for issuing mandamus are discussed in
note, *Supervisory and advisory mandamus under the all writs act*, 86
Harv L R 595, 598-599 (1973).

[6] The law would be simpler and easier to apply if this were not the
case. The Michigan Law Revision Commission has called for reform of
current practice because of "the confusion, inconsistency, complexity
and potential pitfalls which bedevil this area." Michigan Law Revi-
sion Commission, 25th Annual Report (1990), Report & Recommenda-
tions on Judicial Review of Administrative Action, pp 19-20. The
commission has proposed amendment of the Revised Judicature Act
to provide for appeals from local agencies using the substantial
evidence standard of the Administrative Procedures Act.

superintending control was not altered by chang-
ing the name of the pleading, circuit courts should
assume superintending control over a municipal
civil service board in the same circumstances that
the writ of certiorari traditionally would have
issued—when the record of the adjudicative hear-
ing does not contain substantial evidence to sup-
port the finding.[7]

Review by certiorari involved more than asking
whether the lower court or tribunal clearly abused
its power. The standard Michigan formulation of
this principle is found in *Jackson v People,* 9 Mich
111, 119 (1860). After an extensive review of
common-law authority, Justice Campbell, with
Justice Christiancy concurring, concluded "that
the usual office of the common law writ is to inquire
into something more than jurisdiction." While the
reviewing court addresses only questions of law,
these questions include whether the record sup-
port the findings of the lower court:

> [I]n examining into the evidence the appellate
> court does so not to determine whether the proba-
> bilities preponderate one way or the other but
> simply to determine whether the evidence is such
> that it will justify the finding as a legitimate
> inference from the facts proved, whether that
> inference would or would not have been drawn by
> the appellate tribunal. . . . "[A]ll the facts neces-
> sary to subject the party to the penalty imposed by
> the act of parliament must appear upon the infor-
> mation, and must be established by proof." [*Id.* at
> 120.][8]

---

[7] The substantial evidence test is consistent with the autonomy
granted home rule cities. Cf. Const 1963, art 7, § 22.

[8] We understand this to be precisely the same mechanism as the
substantial evidence test. Under each rule, it does not matter whether
a different position is supported by more evidence—that is, which way
the evidence preponderates—but only whether the position taken by
the administrative agency was supported by substantial evidence—

See also *In re Fredericks,* 285 Mich 262, 267; 280 NW 464 (1938) (on certiorari, the court will " 'review the evidence to ascertain only whether there was reasonable ground for the decision made' "); *Erlandson v Genesee Co Employees' Retirement Comm,* 337 Mich 195, 202; 59 NW2d 389 (1953); *State Bar Grievance Administrator v Estes,* 390 Mich 585, 601-602; 212 NW2d 903 (1973) (LEVIN, J., concurring).

Review in the nature of certiorari meets the requirements for review of certain administrative agency decisions set forth in the Constitution of 1963, art 6, § 28. See *Estes* at 591-592. In *Estes,* we held that we would not substitute our judgment for that of the State Bar Grievance Board if its findings were supported by substantial evidence on the record. *Id.* at 593, 597. We have further recognized, as has the Court of Appeals, that the state and federal definitions of substantial evidence both set forth the same principle. See *Soto v Director, Dep't of Social Services,* 73 Mich App 263, 271; 251 NW2d 292 (1977), and *Russo v Dep't of Licensing & Regulation,* 119 Mich App 624, 631; 326 NW2d 583 (1982), adopted by this Court in *Turner v*

that is, whether the inferences made were legitimate and supportable. Contrary to the suggestion of Justice RILEY, see *post* at 704, the substantial evidence test does not require a court to weigh the evidence. "A court will not set aside findings merely because alternative findings also could have been supported by substantial evidence on the record." See *infra,* p 692.

Cases applying the writ of certiorari with differential standards are explained by the fact that the writ was granted in different circumstances. For example, where the question was sufficiency of the evidence in a criminal case, this Court would grant the writ only if there were "a total absence of testimony upon a material fact . . . ." *People v Swanson,* 217 Mich 103, 106; 185 NW 844 (1921). On the other hand, where the question was the propriety of an action by a civil service commission, this Court would grant this writ if there was not "substantial evidence to support the finding of the commission." *Detroit Public Welfare Comm v Detroit Civil Service Comm,* 289 Mich 101, 108; 286 NW 173 (1939). The concurrence dismisses no less than four cases that contradict Justice RILEY's view of the proper scope of certiorari. See *post* at 703-704, 705.

*Washtenaw Co Rd Comm,* 437 Mich 35, 37; 467 NW2d 4 (1991); see also *MERC v Detroit Symphony Orchestra, Inc,* 393 Mich 116, 127; 223 NW2d 283 (1974).

### III

The plaintiff argues that we should affirm the circuit court's decision because the record of the commission's hearing did not contain sufficient evidence to support her discharge. We disagree.

### A

When reviewing the decision of an administrative agency for substantial evidence, a court should accept the agency's findings of fact if they are supported by that quantum of evidence. A court will not set aside findings merely because alternative findings also could have been supported by substantial evidence on the record. See *Arkansas v Oklahoma,* 503 US —, —; 112 S Ct 1046; 117 L Ed 2d 239, 259 (1992).

"Substantial evidence" has a classic definition: the amount of evidence that a reasonable mind would accept as sufficient to support a conclusion. While it consists of more than a scintilla of evidence, it may be substantially less than a preponderance. *Tomczik v State Tenure Comm,* 175 Mich App 495, 499; 438 NW2d 642 (1989); *Detroit Symphony Orchestra* at 122. Although we do not reach the constitutional question, the substantial evidence standard found in Const 1963, art 6, § 28, does not depart from this definition, at least according to its drafters.[9] In *Detroit Symphony Or-*

---

[9] Specific comments made at the 1961 convention indicate that the delegates did not think that the substantial evidence test required that a preponderance of the evidence support the decision of the

*chestra,* the Court explained that review under the constitutional substantial evidence standard is not de novo review:

> The cross-fire of debate at the Constitutional Convention imports meaning to the "substantial evidence" standard in Michigan jurisprudence. What the drafters of the Constitution intended was a thorough judicial review of administrative decision, a review which considers the whole record—that is, both sides of the record—not just those portions of the record supporting the findings of the administrative agency. Although such a review does not attain the status of *de novo* review, it necessarily entails a degree of qualitative and quantitative evaluation of evidence considered by an agency. Such review must be undertaken with considerable sensitivity in order that the courts accord due deference to administrative expertise and not invade the province of exclusive administrative fact-finding by displacing an agency's choice between two reasonably differing views. Cognizant of these concerns, the courts must walk the tightrope of duty which requires judges to provide the prescribed meaningful review. [*Id.* at 124.]

In practice, as Professor Davis illustrates, the scope of review depends on factors other than judicial fidelity to a verbal formula. 5 Davis, Administrative Law (2d ed), § 29.3, pp 340-344. In the words of Justice Frankfurter, the substantial evi-

---

agency, because such a standard would "completely emasculat[e] all of the advantages of administrative tribunals." 1 Official Record, Constitutional Convention 1961, p 1449 (comments of Danhof). Nor does art 6, § 28 "provide for a new trial; [it] does not require the presentation of witnesses. The complete process of review under this proposal is simply a review on the record made before the board of review or commission below. It is a summary proceeding . . . ." *Id.* at 1466 (comments of Leibrand). The provision was intended only to ensure "minimum rights so far as appeals are concerned. . . . [T]here's no attempt to hamstring any department." *Id.* at 1467 (comments of Iverson).

dence requirement "does not furnish a calculus of value by which a reviewing court can assess the evidence." *Universal Camera Corp v NLRB,* 340 US 474, 488; 71 S Ct 456; 95 L Ed 456 (1951). Substantial evidence review, like standing requirements in Article III of the United States Constitution, "cannot be defined so as to make application . . . a mechanical exercise." *Allen v Wright,* 468 US 737, 751; 104 S Ct 3315; 82 L Ed 2d 556 (1984).

Attempts to clarify the standard of review by embroidering the formula with more elaborate verbalisms may be more harmful than helpful. According to Professor Davis, the formula "alone is not harmful, but it becomes harmful when it takes the place of analysis that shows why the court reviews in a particular manner or degree . . . ." 5 Davis, *supra* at 340. An understanding of the reasons behind judicial review of administrative decisions is the base line for determining the scope of judicial inquiry.

The underlying purpose of judicial review of the factual findings of administrative agencies relates to the comparative expertise of the two institutions. A court is expert at adjudication—determining disputed facts by holding hearings. A municipal civil service board, on the other hand, the administrative agency in this case, is expert at determining job requirements for a city employee. To this end, the agency may establish qualifications and rules for employee conduct on the job. These rules might be considered promises to employees that their jobs will be secure as long as they perform them acceptably, and that this security is not subject to, in Professor Nozick's words, "[t]he [z]igzag of [p]olitics."[10] In that sense, the

[10] Nozick, *The Examined Life: Philosophical Meditations* (New York: Simon & Schuster, 1989), ch 25, p 286.

province of a city's civil service commission, should it choose to have one at all, is to decide what qualifications and behavior the city will require of its employees and how much security it will promise them. The role of the reviewing court is to ensure that the city's employees receive what they have been promised by reviewing whether there was substantial evidence to support the agency's factual determinations.

In this case, the rules of the Muskegon Civil Service Commission provide that an employee who fails to perform work after being warned may be terminated. See *ante,* p 686, n 2. The agency found[11] that the plaintiff violated this rule. The circuit court should have accepted this finding because the plaintiff concedes that as of July 17 she had not performed some of the very work she was warned about failing to complete in the letter of June 5. As a result of her failure, some of the items from April and May had not yet been properly recorded.

B

The plaintiff also complains, as she has throughout this matter, that the Muskegon Civil Service Commission should have imposed a less severe penalty. She notes that her actions could have

[11] An agency subject to substantial evidence review, in order to facilitate that process, is ordinarily required to enter findings of fact. The Administrative Procedures Act, for example, requires that a person "who conducted the hearing or who has read the record" prepare "a statement of the reasons therefor and of each issue of fact and law necessary to the proposed decision . . . ." MCL 24.281(2); MSA 3.560(181)(2). When a commission enters such findings, a court must review those findings.

In this case, the commission did not enter formal findings of fact, but the facts are undisputed. In a more factually complicated case, a circuit court could order an agency that has not already done so to enter formal findings.

been characterized as a Group 1 or Group 2 offense, which would not be grounds for termination.

The determination of the appropriate penalty did not involve any questions of fact because the commission's rules allow it to terminate the plaintiff under the facts she conceded.[12] Consequently, this determination is not subject to substantial evidence review. Cf. *NLRB v Curtin Matheson*

---

[12] The dissenting opinion asserts that "federal courts do review an agency's decision discharging an employee to determine whether the punishment was proportionate." *Post* at 732. The dissent fails to mention, however, that the cases it cites apply a federal statute that appears to have no Michigan counterpart. See 5 USC 7703(c), as amended April 2, 1982 (cited in *Brown v United States Postal Service,* 860 F2d 884, 888 [CA 9, 1988]). If anything, the *Brown* decision confirms that the determination of the appropriate penalty is not subject to substantial evidence review, because the court also reviewed the factual findings of the agency, and only those findings, for substantial evidence. 860 F2d 887-888. It did not, however, review the proportionality of the punishment for substantial evidence. *Id.* at 888-889.

Moreover, the cases cited by the dissent do not support the proposition that this Court "reversed *decisions* of a municipal civil service commission sustaining the discharge of employees because this Court found that the penalty of discharge was disproportionate to the offense." *Post* at 734. In those cases, the civil service commissions violated their own rules.

In *Brown v Dep't of State Police,* 392 Mich 811 (1974), we "set[ ] aside the order of discharge of the Civil Service Commission in light of the failure to follow departmental rules and regulations and the appearance of resulting prejudice for Brown." The reason for reversal appears to have been the "resulting prejudice," and not "excessive and arbitrary discipline."

Similarly, in *Konyha v Mt Clemens Civil Service Comm,* 393 Mich 422, 427; 224 NW2d 833 (1975), the decision indicates that the Court reversed the decision to discharge because

the chief's discharge of Konyha was predicated not only on this particular missed roll call and the earlier infraction, but rather was motivated by a general dissatisfaction—not charged—with Konyha's performance.

These other charges, however, were not brought within ninety days of the date of violation, contrary to MCL 38.514; MSA 5.3364. 393 Mich 428.

Finally, in *Fannon v Southfield,* 405 Mich 558, 560; 275 NW2d 256 (1979), the Court remanded for reconsideration of the penalty imposed because it had dismissed four of the five charges alleged by the city.

*Scientific, Inc,* 494 US 775, 778, n 2; 110 S Ct 1542;
108 L Ed 2d 801 (1990) (substantial evidence re-
view applies only to evidentiary questions); *Deer-
ing v Unionville-Sebewaing Area Schools,* 97 Mich
App 629, 631; 296 NW2d 131 (1980) (factual find-
ings must be supported by substantial evidence).
The only issue is the legal question whether a city
may terminate an employee who failed to perform
work after being warned. We hold that nothing in
Michigan law requires a city to retain such an
employee.

The rule-making authority of municipal civil
service commissions, unlike other administrative
agencies, is not restricted. Most administrative
agencies, for example the Teacher Tenure Commis-
sion, see MCL 38.71 *et seq.*; MSA 15.1971 *et seq.,*
must follow the commands of the statute that
created them. A city civil service commission, on
the other hand, is free from statutory restrictions.
In fact, a city need not have a civil service system
at all. See Const 1963, art 11, § 6; MCL 117.4i(h);
MSA 5.2082(h).

City employees, like other employees, may be
terminated at will unless distinguishing circum-
stances dictate otherwise. See *Rowe v Montgomery
Ward & Co, Inc,* 437 Mich 627; 473 NW2d 268
(1991). To the extent that a civil service system
presents distinguishing circumstances, employees
can expect to retain their jobs as long as they
follow the rules of the civil service commission.[13]
In this case, our review for substantial evidence
reveals that the commission followed its own rules.

Contrary to the assertion in the dissenting opin-

---

[13] A civil service commission's rule might be illegal because it is not
"authorized by law." Const 1963, art 6, § 28. For example, even at-will
employees may not be discharged because of their race or gender, see,
e.g., MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.,* and may not be
required to work at less than the minimum wage, see, e.g., MCL
408.384; MSA 17.255(4).

ion, we do not evaluate the employment policies of defendant unless they are alleged to violate the law. There has been no such allegation in this case. Hence, this Court must only determine whether sufficient factual evidence supported the defendant's charges of misconduct. While some sympathetic evidence existed to support the circuit court's resolution of the case, that court erred by substituting its judgment for that of an employer.

IV

We remand the case to the circuit court for entry of judgment in favor of the defendant.

CAVANAGH, C.J., and BRICKLEY, J., concurred with BOYLE, J.

RILEY, J. (*concurring in part and dissenting in part*). Although I agree that defendant's dismissal of plaintiff was valid and join part III of the lead opinion, because I find that the substantial evidence standard of Const 1963, art 6, § 28 is applicable in the instant case, I write separately.

I

At issue in the instant case is the applicable standard of review for a writ of superintending control directed at a municipal civil service commission. The lead opinion does not examine whether art 6, § 28 of the 1963 Constitution applies because it finds that "[r]eview in the nature of certiorari meets the requirements for review of certain administrative agency decisions set forth in the Constitution of 1963 . . . ." *Ante* at 691. The lead opinion reasons that the common-law standard of certiorari incorporated the substantial

evidence standard, and that reference to the constitution is unnecessary to apply that standard in the instant case. Unfortunately, the lead opinion misconstrues either the scope of the common-law writ of certiorari to incorporate a substantial evidence standard or the scope of review under the substantial evidence standard to be, in essence, the any competent evidence standard. In either case, the opinion is misguided.

"When a reviewing court issues an order of superintending control, the reviewing court is invoking an extraordinary power." *In re People v Burton,* 429 Mich 133, 144; 413 NW2d 413 (1987). The writ of superintending control "supercedes the writs of *certiorari,* mandamus and prohibition, providing one simplified procedure for reviewing or supervising the actions of lower courts and tribunals." *Genesee Prosecutor v Genesee Circuit Judge,* 386 Mich 672, 679; 194 NW2d 693 (1972).

This Court has long held that in cases involving a writ of certiorari the reviewing court may only consider questions of law, and may not weigh conflicting evidence "unless there was a total want of testimony to sustain" a finding necessary to the success of an action. *Gaines v Betts,* 2 Doug 98, 100 (Mich, 1845). Justice CAMPBELL, with Justice CHRISTIANCY concurring, elaborated regarding the deferential nature of the writ:

> It was held by this Court in *Berry v. Lowe,* 10 Mich 9 [1862], that the Circuit Court could not reverse the judgment of [a lower tribunal on a writ of certiorari] on the evidence, unless no proof could be found in the case which, if believed, would maintain it. If there is a conflict of testimony, and still evidence has been put in which covers the whole case, so far that, if believed, it would warrant a verdict, the court above must respect the finding, whether it is, or not, such as

would have been made by the appellate court if it
had power to weigh the evidence. [*Welch v Bagg,*
12 Mich 41, 45 (1863).]

In other words, "[i]f the alleged error is a total
want of evidence to prove some fact necessary to
sustain the judgment, the Court will look into the
testimony to see whether there was such evidence
or not. If there was, it will not weigh it, or inquire
into its sufficiency, but affirm the judgment."
*Berry, supra* at 15. Even a major opinion cited by
the lead opinion states that "the appellate court
does so [examine the evidence] not to determine
whether the probabilities preponderate one way or
the other . . . ." *Jackson v People,* 9 Mich 111,
120 (1860). Often referred to as the "any compe-
tent evidence" standard or the "scintilla" rule,
"[t]he writ of *certiorari* is for review of errors of
law and our inquiry is limited to determining 'if
the inferior tribunal, upon the record made, had
jurisdiction, whether or not it exceeded that juris-
diction and proceeded according to law.' " *Genesee
Prosecutor, supra* at 681, quoting *In re Fredericks,*
285 Mich 262, 267; 280 NW2d 464 (1938). See also
*Burton, supra* at 144. This understanding of the
writ is well established and has been unquestioned
for almost a century and a half of jurisprudence.[1]

---

[1] See also *Higley v Lant,* 3 Mich 612, 614 (1855) (noting that one of
the defendant's allegations of error "can only be determined in this
case by reviewing, weighing and balancing the conflicting testimony
of all the witnesses introduced and examined by the respective parties
on the trial of the cause in the county court. And this cannot be
done . . . by the circuit court on *certiorari*"); *Cicotte v Morse,* 8 Mich
424, 428 (1860) (noting that on a writ of certiorari "[i]f there is any
evidence tending to prove a fact, and the court below regards it as
proved, we cannot say it should have required more"); *Welch v Bagg,
supra* at 44 (opinion of Manning, J.) (noting that on a writ a
certiorari "[a]ll [the reviewing court] can do is to inquire whether
there was a total want of evidence before [the lower tribunal] to prove
some fact that should have been proved to sustain the action");
*Overpack v Ruggles,* 27 Mich 65, 66 (1873) (finding that on certiorari
the circuit court's reduction of judgment occurred because it

"weigh[ed] the testimony, and credit[ed] that which the [lower tribunal] did not credit. This the court had no authority to do"); *Garvin v Gorman,* 63 Mich 221, 222; 29 NW 525 (1886) ("[s]o far as the set-off is concerned, there was testimony on both sides, and the [lower tribunal] acted upon it. His conclusion could not be disputed on *certiorari*"); *Detroit Citizens' Street R Co v Common Council of Detroit,* 125 Mich 673, 704; 85 NW 96 (1901) ("This case, being here by *certiorari,* is not to be tried de novo; nor can the finding be set aside unless it clearly appears to be unsupported by the evidence"); *Collier v St Charles Twp Bd,* 147 Mich 688, 692; 111 NW 340 (1907) ("The office of the writ of certiorari is to try questions of law. The facts are not reviewable"); *McGurrin v Grand Rapids Twp Bd,* 186 Mich 475, 478; 153 NW 17 (1915) ("the office of the common-law writ of certiorari . . . bring[s] up for review the proceedings of the lower court or the proceedings of an official board, to determine whether such court or board acted within its jurisdiction, or to review the manner in which the jurisdiction was exercised, but not to review questions of fact"); *People v Swanson,* 217 Mich 103, 106; 185 NW 844 (1921) ("The inquiry by review on certiorari is directed to ascertaining whether errors of law shown by the return are of such nature as to invalidate the proceedings. Questions of fact will not be considered. . . . The court will only review the evidence to ascertain and determine whether a total absence of testimony upon a material fact leaves the findings or verdict destitute of evidential support"); *Carroll v Grand Rapids City Comm,* 266 Mich 123, 126; 253 NW 240 (1934) ("'On certiorari questions of law only are reviewable'" [citation omitted]); *In re Gilliland,* 284 Mich 604, 612; 280 NW 63 (1938) ("On certiorari we do not pass on the weight of the evidence or the credibility of witnesses. There being some evidence to support the finding of the trial judge, we cannot disturb it on certiorari"); *Great Lakes Greyhound v UAW-CIO,* 341 Mich 290, 304; 67 NW2d 105 (1954), quoting *In re Gilliland, supra* at 612; *Leenknegt v McCormick Industries,* 349 Mich 430, 432; 84 NW2d 881 (1957), quoting *Jackson, supra* at 120; *Trojan v Taylor Twp,* 352 Mich 636, 640-641; 91 NW2d 9 (1958), quoting *Leenknegt, supra* at 432, quoting *Jackson, supra* at 120; *Scallen v State Health Comm'r,* 376 Mich 64, 71-72; 135 NW2d 426 (1965) (SOURIS, J., dissenting) ("'The office of a *certiorari* is not however to review questions of fact, but questions of law. And in examining into the evidence the appellate court does so not to determine whether the probabilities preponderate one way or the other but simply to determine whether the evidence is such that it will justify the finding as a legitimate inference from the facts proved, whether that inference would or would not have been drawn by the appellate tribunal'"); *id.* at 80 (opinion of O'HARA, J.) ("The narrow limits of review by certiorari are pointed out by Mr. Justice SOURIS. I accept them"); *id.* at 81 (opinion of BLACK, J.) ("describing the scope of review upon *certiorari*" as one in which "'this Court does not review the findings of fact of the board, except to determine whether there is any evidence to support the award'"); *Lepofsky v Lincoln Park,* 48 Mich App 347, 356; 210 NW2d 517 (1973) ("characterizing this action as one in certiorari, the trial judge's review must of necessity be limited to questions of *law;* in examining the evidence the trial court does so only to justify the

The lead opinion contends that such review meets the requirements of the art 6, § 28 substantial evidence standard. Yet, this Court, relying on the intentions of the framers and ratifiers of the provision, has defined "substantial evidence" as requiring more than the review required by the writ of certiorari:

The cross-fire of debate at the Constitutional Convention imports meaning to the "substantial evidence" standard in Michigan jurisprudence. What the drafters of the Constitution intended was a thorough judicial review of administrative decision, a review which considers the whole record—that is, both sides of the record—not just those portions of the record supporting the findings of the administrative agency. Although such a review does not attain the status of *de novo* review, it necessarily entails a degree of qualitative and quantitative evaluation of evidence considered by an agency. Such review must be undertaken with considerable sensitivity in order that the courts accord due deference to administrative ex-

finding in the inferior tribunal below as a legitimate inference from the facts proven"); *Wayne Co Prosecutor v Recorder's Court Judge,* 101 Mich App 772, 775; 300 NW2d 516 (1980) ("In reviewing the decision of the magistrate, a superintending court does not substitute its judgment or discretion for that of the magistrate. It examines the record to determine whether there was an abuse of discretion amounting to a failure to perform a clear legal duty"); *Wayne Co Prosecutor v Recorder's Court Judge,* 151 Mich App 550, 553-554; 391 NW2d 407 (1986) ("Historically, the scope of review pursuant to a writ of certiorari is limited to determining whether the inferior tribunal, upon the record made, had jurisdiction, whether the inferior tribunal exceeded that jurisdiction, and whether the inferior tribunal proceeded according to law"). Cf. *People v Flint Municipal Judge,* 383 Mich 429, 432; 175 NW2d 750 (1970) ("The superintending court does not substitute its judgment or discretion for that of the magistrate; neither does it act directly in the premises. Rather it examines the record made before the magistrate to determine whether there was such an abuse of discretion as would amount to a failure to perform a clear legal duty" regarding mandamus). But see *Herring v Hock,* 1 Mich 501 (1850) (finding that a judgment not manifestly supported by the evidence may be reversed on certiorari). *Herring,* however, was criticized and rejected by this Court as an anomaly over a century ago. *Berry, supra* at 11-12.

pertise and not invade the province of exclusive administrative fact-finding by displacing an agency's choice between two reasonably differing views. Cognizant of these concerns, the courts must walk the tightrope of duty which requires judges to provide the prescribed meaningful review. [*MERC v Detroit Symphony Orchestra, Inc,* 393 Mich 116, 124; 223 NW2d 283 (1974).][2]

While not an examination de novo, the substantial evidence standard involves more stringent review than the scintilla rule or any evidence standard of the writ of certiorari.

Nevertheless, as the lead opinion and dissent note, this Court has on occasion referred to the standard to be applied during a writ of certiorari as a "substantial evidence" standard. See, e.g., *Detroit Public Welfare Comm v Detroit Civil Service Comm,* 289 Mich 101, 108; 286 NW 173 (1939); *Schubert v Dearborn Civil Service Bd,* 311 Mich 553, 561; 19 NW2d 96 (1945); *O'Dell v Flint Civil Service Comm,* 328 Mich 631, 636-637; 44 NW2d 157 (1950). These cases, however, in practice utilize the scintilla rule. In *Detroit Welfare Comm, supra* at 106-107, for example, the Court noted that "[c]ertiorari is an appropriate remedy to get rid of a void judgment, one which there is no evidence to sustain."[3] Similarly, *Schubert* explained that " '[o]n certiorari this court may not review questions of fact. It is not at liberty to determine disputed facts, nor to review the weight of the evidence.' " *Id.* at 561, quoting *Carroll v Grand*

[2] See also *Midland Twp v State Boundary Comm,* 401 Mich 641, 672-673; 259 NW2d 326 (1977).

[3] The Court emphasized that " ' "[t]he office of a certiorari is not however to review questions of facts, but questions of law. And in examining into the evidence the appellate court does so not to determine whether the probabilities preponderate one way or the other but simply to determine whether the evidence is such that it will justify the finding as a legitimate inference from the facts . . . ." ' " *Id.* at 107 (citations omitted).

*Rapids City Comm,* 266 Mich 123, 125; 253 NW 240 (1934) (citations omitted).[4]

The lead opinion and dissent rely upon such cases to argue that the "substantial evidence" standard has been historically utilized by the writ of certiorari, but the standard, at best, was simply mislabeled "substantial." Regardless of its labeling, the substantial evidence test formulated by art 6, § 28 is not satisfied by the review entailed under the traditional writ of certiorari. Indeed, on the eve of the ratification of the constitution, this Court disclaimed any weighing of the evidence in cases involving certiorari. *Bedwell v Employment Security Comm,* 367 Mich 415, 421-422; 116 NW2d 920 (1962), quoting *Peadon v Employment Security Comm,* 355 Mich 613, 631; 96 NW2d 281 (1959).[5] The substantial evidence standard envisioned by the framers and ratifiers of art 6, § 28 is more stringent than a mere cursory review for a scintilla of evidence. After all, the substantial evidence test of art 6, § 28 mandates meaningful evaluation

---

[4] Neither do *Erlandson v Genesee Co Employees' Retirement Comm,* 337 Mich 195, 202; 59 NW2d 389 (1953) nor *In re Fredericks, supra,* apply a different standard of review. *Erlandson, supra* at 202 (" 'The office of a certiorari is not however to review questions of fact . . . . And in examining into the evidence the appellate court does so not to determine whether the probabilities . . . but simply to determine whether the evidence is such that it will justify the finding as a legitimate inference from the facts proved.' " [Citation omitted.]); *In re Fredericks, supra* at 267 ("review intended by the legislature as an appeal in the nature of certiorari. The scope of review upon such an appeal is limited to determining if the inferior tribunal, upon the record made, had jurisdiction, whether or not it exceeded that jurisdiction and proceeded according to law").

[5]   [I]t is neither for us nor the circuit court to determine issues of fact. . . . It was error for the circuit court to make its own appraisal of the testimony and to pick and choose from the testimony and inferences therefrom in order to reach a holding that the decision of the appeal board was against the great weight of the evidence. . . .

"Our function is exhausted once it is found, as we have found, that the evidentiary record permitted the appeal board to draw such a conclusion."

of the "qualitative and quantitative" aspects of the evidence relied upon by the lower tribunal, whereas the writ of certiorari prohibits any such evaluation. To equate the two standards of review is improper because it either significantly strengthens the scrutiny under certiorari or significantly weakens the scrutiny of art 6, § 28. Hence, the ratifiers and framers of the constitution did not envision that the substantial evidence standard of art 6, § 28 would be satisfied by the review undertaken in a writ of certiorari.

The lead opinion, however, also notes that this Court found in *State Bar Grievance Administrator v Estes,* 390 Mich 585, 592; 212 NW2d 903 (1973), that "[r]eview in the nature of certiorari meets" the constitutional standard of art 6, § 28. That Court, however, not unlike the lead opinion, simply failed to examine the nature of the writ of certiorari as compared to the standard of review necessitated by art 6, § 28. See, *id.* at 601-602 (LEVIN, J., concurring) (noting the difference between review under art 6, § 28 and under the writ of certiorari).

As the author of the lead opinion has previously explained, limiting the review on certiorari to "errors of law and . . . whether 'the inferior tribunal, upon the record made, had jurisdiction, whether or not it exceeded that jurisdiction and proceeded according to law,' " is essential because

> [a]n appeal and a writ of superintending control are, functionally and conceptually, different. An appeal is primarily a device for correcting legal error which occurs in the course of litigation. A writ of superintending control, on the other hand, is "designed to correct errors so gross as to be almost foreign to the judicial system." Note, *Supervisory and advisory mandamus under the all writs act,* 86 Harv L R 595, 626 (1973). The former

primarily protects the interests of the particular litigants as the final stage of the process through which justice is achieved. The latter serves the interests of the judicial system as a whole as a device for protecting the system's integrity and furthering its efficiency. *Id.,* 626-627.[3]

---

[3] See also *Genesee Prosecutor* [*supra* at 680,] quoting *People v Flint Municipal Judge,* 383 Mich 429, 432; 175 NW2d 750 (1970) ("The process is not, properly speaking, an appeal. It is rather a whole new lawsuit, with different parties and different purposes").

---

[*Burton, supra* at 146, 149-150 (BOYLE, J., concurring). Citation omitted.]

Thus, "it is appropriate to prevent expansion of the use of superintending control as a substitute for appeal." *Id.* at 147-148. Yet, the lead opinion does just that by elevating the scrutiny under the writ to the standard of art 6, § 28.

II

A proper construction of the Michigan Constitution reveals that art 6, § 28 is applicable in the instant case. Art 6, § 28 mandates in pertinent part:

All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record.

The purpose of constitutional construction is to

determine the intent of the ratifiers at the time of its adoption. *Lockwood v Comm'r of Revenue,* 357 Mich 517, 555; 98 NW2d 753 (1959). While the best source of this intent is the plain meaning of the document,[6] often "we must take into consideration the times and circumstances under which the

[6] As Justice COOLEY explained, "[t]he object of construction, as applied to a written constitution, is *to give effect to the intent of the people in adopting it.*" 1 Cooley, Constitutional Limitations (8th ed), p 124 (emphasis in original). See also *Committee for Constitutional Reform v Secretary of State,* 425 Mich 336, 342; 389 NW2d 430 (1986); *Traverse City School Dist v Attorney General,* 384 Mich 390, 405; 185 NW2d 9 (1971). Justice COOLEY elaborated:

> For as the constitution does not derive its force from the convention which framed, but from the people who ratified it, the intent to be arrived at is that of the people, and it is not to be supposed that they have looked for any dark or abstruse meaning in the words employed, but rather that they have accepted them in the sense most obvious to the common understanding, and ratified the instrument in the belief that that was the sense designed to be conveyed. [Cooley, *supra* at 143.]

Hence, the language of the constitution provision should be interpreted by its *"natural and ordinary meaning." Id.* at 130. Thus, "[n]arrow and technical reasoning is misplaced when it is brought to bear upon an instrument framed by the people themselves, for themselves, and designed as a chart upon which every man, learned and unlearned, may be able to trace the leading principles of government." *Id.* at 131-132.
Nevertheless,

> it must not be forgotten, in construing our constitutions, that in many particulars they are but the legitimate successors of the great charters of English liberty, whose provisions declaratory of the rights of the subject have acquired a well-understood meaning, which the people must be supposed to have had in view in adopting them. We cannot understand these provisions unless we understand their history, and when we find them expressed in technical words, and words of art, we must suppose these words to be employed in their technical sense. [*Id.* at 132.]

Hence, phrases such as "due process," "ex post facto law," and "free exercise of religion" convey a long historical tradition of content and meaning. In the instant case, however, the phrase "existing under the constitution or by law" is not a "successor[ ] of the great charters of English liberty," nor does it appear to have a "well-understood meaning." Hence, this Court must examine the phrase by utilizing its natural and ordinary meaning, with reference to its purpose and the

State Constitution was formed—the general spirit of the times and the prevailing sentiments among the people." *People v Harding,* 53 Mich 481, 485; 19 NW 155 (1884). See also *Traverse City School Dist v Attorney General,* 384 Mich 390, 405; 185 NW2d 9 (1971). Thus, an examination of the framers' comments during the constitutional convention is appropriate if the intentions of the ratifiers are ambiguous and the comments reveal the object of a particular provision. *Regents of the Univ of Michigan v Michigan,* 395 Mich 52, 60; 235 NW2d 1 (1975). Such interpretation is necessary because "[e]very constitution has a history of its own which is likely to be more or less peculiar; and unless interpreted in the light of this history, is liable to be made to express purposes which were never within the minds of the people in agreeing to it. This the court must keep in mind when called upon to interpret it; for their duty is to enforce the law which the people have made, and not some other law which the words of the constitution may possibly be made to express." *Harding, supra* at 485.

A

Defendant does not dispute that it is an administrative agency "existing under the constitution or by law" that exercises at least quasi-judicial powers that affect private rights. See, e.g., *Martin v Wayne Co Civil Service Comm,* 16 Mich App 536, 539; 168 NW2d 419 (1969); *Justewicz v Hamtramck Civil Service Comm,* 65 Mich App 555, 559-560; 237 NW2d 555 (1975); *Choike v Detroit,* 94 Mich App 703, 707-708; 290 NW2d 58 (1980) (applying art 6, § 28 to actions for superintending

historical circumstances surrounding its adoption if that meaning is ambiguous.

control involving local civil service commissions);
and *Eckstein v Kuhn,* 160 Mich App 240, 243; 408
NW2d 131 (1987); *O'Connor v Oakland Co
Sheriff's Dep't,* 169 Mich App 790, 794; 426 NW2d
816 (1988) (finding the Oakland County Personnel
Appeal Board "a local administrative agency,
which 'exists under the Constitution' ").[7] In any
event, the clear language of the provision, com-
bined with the intentions of the Constitutional
Convention, supports the application of the provi-
sion to defendant.[8]

---

[7] Similarly, courts have applied the provision in actions for superin-
tending control when appealing decisions of local zoning boards,
which are authorized but not created by state statute. See, e.g.,
*Quigley v Dexter Twp,* 390 Mich 707, 708; 213 NW2d 166 (1973)
(noting that zoning boards of appeals are established "under" MCL
125.585; MSA 5.2935, although the creation of such boards is discre-
tionary). *Lorland Civic Ass'n v DiMatteo,* 10 Mich App 129, 136; 157
NW2d 1 (1968); *Keating Int'l Corp v Orion Twp,* 51 Mich App 122,
125-126; 214 NW2d 551 (1974), aff'd 395 Mich 539; 236 NW2d 409
(1975).

[8] Delegate Ford, for instance, while arguing against the provision,
specifically noted that it would apply to local civil service boards:

[T]here is no way to correct this section and avoid the
inevitable effect of placing in the path of all administrative
boards, bodies and agencies—whether they be at the local
government level or the state level—a roadblock that will make
it practically impossible to utilize the field of administrative
law in this state to its best advantage. [2 Official Record,
Constitutional Convention 1961, p 2713.]

See also 1 Official Record, Constitutional Convention 1961, p 1441
(comment of Ford) (noting that the provision would apply to an
"appeal from the suspension of a policeman under the civil service
statute or charter provision"); *id.,* p 1448 ("[the provision] says that
evidence has to fairly support the finding of fact made by the
administrative body or agency—for example, a civil service commis-
sion"); *id.,* p 1464 (noting that provision would apply to license
applications "from every municipality in this state and every county
in the state").

Delegate Martin also expressed his understanding that the provi-
sion would apply to "various municipalities." 2 Official Record, *supra,*
p 2718. Similarly, Delegate Nord, opposing the measure, concluded
that with the provision "it seems clear to me that we open the door
for every single case, every determination by any administrative
board, to be subjected to a review." 1 Official Record, *supra,* p 1468.

B

Defendant, however, suggests that because the sole mode of review of the agency in question is by the extraordinary writ of superintending control, art 6, § 28 is inapplicable because the Muskegon Civil Service Commission's decision was not subject to direct review by the courts "as provided by law." In fact, in *Evans v United States Rubber Co,* 379 Mich 457, 461; 152 NW2d 641 (1967), a unanimous Court held that art 6, § 28 did not mandate a right of appeal to the Court of Appeals in workers' compensation cases. Finding that no legislation

Moreover, a central concern of the convention was to ensure that administrative agencies did not deprive persons of their livelihood without some form of significant judicial review. Delegate Everett expressed this sentiment poignantly:

Certainly, it seems to me it would be shocking indeed to tell a man that his neighbor, who can appeal to a court if he is fined $10 in a traffic matter, may not appeal to the court if his very job is taken away from him by some administrative agency. This would be a fundamental error in not protecting one of the most important rights that all of us have. [1 Official Record, *supra,* p 1451 (comments of Everett).]

See also 1 Official Record, *supra,* p 1450 (comments of Leibrand) ("Delegate Ford speaks of the revocation of licenses and privileges and how we shouldn't interfere with them, how it is not necessary for court protection. Let's put that on a more personal basis. That plumber's license is his livelihood, the way he feeds himself and his family. That insurance man's license is his livelihood. And I feel that no man should be deprived of his livelihood without the opportunity for judicial review." *Id.*); 2 Official Record, *supra,* p 2716 (comments of Everett) ("when it comes to liquor licenses and things like this, . . . [t]here is also the livelihood of the individual involved. It seems to me that he is just as much entitled to review in court of this very drastic decision which may cost him his livelihood, not only his license temporarily, but possibly permanently"); *id.* (comments of G. E. Brown) ("if we can provide judicial review for $100 cases and other cases of this nature, it certainly isn't going too far to permit the judicial review of the very means by which a man makes his livelihood").

Thus, the provision was intended to encompass the widest possible breadth of administrative agencies, and especially grant to those whose livelihoods were affected by the agencies significant judicial review.

authorized such an appeal, the Court refused to recognize an appeal as a matter of right. *Id.*[9] Similarly, the Court of Appeals in *Eckstein, supra* at 245, refused to apply art 6, § 28 because "no statute or court rule authorizes any form of appeal to circuit court from the decisions of municipal administrative agencies such as the" Oakland County Personnel Appeal Board.[10]

Yet, the constitution mandates only that direct review be provided by law and the substantial evidence standard apply to such review. The Legislature has provided review through the superintending writ,[11] which standard of review then becomes constitutionally modified by art 6, § 28. See, e.g., *Martin, supra* at 539; *Justewicz, supra* at 559-560; *Choike, supra* at 707-708. Defendant's argument that there is no review of agency matters provided by law is simply denied by the superintending writ statute.

Furthermore, even if the Legislature failed to provide any form of review, the circuit court would be forced to craft such a reviewing mechanism. The constitutional language is unambiguous: "All final decisions . . . of any . . . agency . . . *shall* be subject to direct review . . . ." Art 6, § 28 (emphasis added). Similarly, the Address to the People clearly states that art 6, § 28 "provides that decisions, findings, rulings and orders of administrative officers or agencies which affect private

[9] In *Viculin v Dep't of Civil Service,* 386 Mich 375; 192 NW2d 449 (1971), however, the Court hedged away from its holding in *Evans* by finding that the provision "does not guarantee a review in the nature of *certiorari* of 'right' but an appeal of such a nature may require 'leave' or be automatic as provided by law." *Id.* at 392.

[10] See also *Robertson v Detroit,* 131 Mich App 594, 597; 345 NW2d 695 (1983) (holding that because the Legislature had not enacted legislation regulating the "actual operation of general municipal civil service commissions" art 6, § 28 was inapplicable); *O'Connor, supra* at 794-795.

[11] MCL 600.615; MSA 27A.615.

rights be subject to judicial review." 2 Official
Record, Constitutional Convention 1961, p 3389.
The intention of the ratifiers and framers was
clearly expressed by the mandatory language of
the provision. As of the adoption of the constitu-
tion, all administrative agencies exercising quasi-
judicial power became subject to judicial review. In
short, the provision "guarantees judicial review of
administrative decisions . . . ." *McAvoy v H B
Sherman Co,* 401 Mich 419, 441; 258 NW2d 414
(1977).

Furthermore, the historical circumstances sur-
rounding the adoption of the provision support the
application of the substantial evidence standard.
At the time of the framing and adoption of the
1963 Constitution, Michigan's citizens confronted a
monolithic, unwieldy, and confusing state bureau-
cracy affecting nearly every aspect of their lives.[12]
Unimagined by the Founding Fathers and the
drafters of prior Michigan Constitutions, the rise
of the modern bureaucratic state vested often
insular and unaccountable administrative agencies
with substantial control over the day-to-day lives
of Michigan's citizenry.[13] At the time of the 1961
Constitutional Convention, there existed at least
"125 to 150 boards, bureaus and commissions, with

[12] The ubiquitous nature of administrative agencies is unquestiona-
ble: administrative agencies grant or deny licenses to practice profes-
sions, operate businesses, drive automobiles, construct buildings, uti-
lize natural resources, and determine the use of land. Bienenfeld,
Michigan Administrative Law (2d ed), ch 1, pp 1-2. Agencies also
"settle labor disputes, set the amount of taxes to be paid, grant
paroles to inmates of penal institutions, fix rates for public utilities,
determine welfare benefits, employment security benefits, worker's
disability benefits and the rights of public employees, and resolve
election disputes and disputes arising from discrimination based on
race, color, national origin, sex, age, and physical disability." *Id.*

[13] The rapid rise of administrative agencies has been justified by
legislators "to cope with massive social, economic, political, and
environmental problems that accompanied advances in technology,
changes in social structure, .increases in population, and greater
concentrations of population." Bienenfeld, n 12 *supra,* ch 3, p 1.

great, great powers over private rights and private property." 1 Official Record, Constitutional Convention 1961, p 1444 (comments of Leibrand). Indeed, the expansion and pervasive influence of this sprawling bureaucracy was so acute in Michigan that members of the 1961 Constitutional Convention referred to the state apparatus as a "labyrinth of horrors or chamber of horrors" resulting in " 'administrative disintegration.' " 2 Official Record, *supra,* p 1837 (comments of Bentley) (citation omitted). In response, the people bridled the bureaucracy, in part, through the ratification of art 6, § 28.[14]

The novel provision enacted revolutionary changes in the operations of state government.[15]

Delegate Krolikowski, chairman of the committee from which the provision was originally drafted, explained the specific origin of the provision at the time of its introduction to the convention:

Since the adoption of our present constitution in 1908, the field of administrative law has been expanded to a point where today it occupies a position of prominent importance in the jurisprudence of our state. The committee proposal strikes at an area that is presently covered in the main by statutory law and case law. In the opinion of the

[14] For another striking example of the substantial reformation of the state constitution in response to the bewildering bureaucracy, see *House Speaker v Governor,* 443 Mich 560, 562; 506 NW2d 190 (1993) (recounting the reorganization of the executive branch by the 1961 convention to grant the Governor "some real control over the executive branch").

[15] See, e.g., 1 Official Record, *supra,* p 1473 (comments of Faxon) (noting that the provision was "opening up an area that had been hitherto untouched in constitutional language in other states and in our own state in our history"); *id.,* p 1478 (comments of Martin) ("I am impressed, first of all, by the tremendous scope of the proposal that is being made. There is no question at all but that this is one of the most far ranging proposals for change which we are making in this entire constitution").

committee a constitutional provision is necessary in order to assure a judicial review of administrative agencies and appended thereto a minimal scope of review. [1 Official Record, *supra,* p 1443.][16]

Other delegates noted that administrative "abuse" occurred and that "it has thereby become necessary to protect the people in their right of appeal and their right to be heard in another branch of the government, namely, the judicial branch, on matters affecting their person, their property or their business." *Id.,* p 1444 (comments of Iverson).[17] The purpose of the provision, therefore, was to "grant the citizens of this state a right of review of a determination by an administrative body," *id.,* p 1467, and to "negate the possibility of conclusive findings of fact on the part of an admin-

---

[16] Others explained similarly:

[I]n 1908 administrative agencies were virtually unknown in the state of Michigan. They were very rarely used in the federal government. Since that time we have had a tremendous growth in the use of administrative agencies and they perform a valuable function but they have cut themselves so far afield from what we know as the judicial determination of rights that they now are virtually a separate form of government all by themselves.

This amendment does not bring them back totally into the field of the proper determination of rights as we traditionally look at it. It only says this: whoever hears this case . . . cannot issue a binding order unless that order is supported by competent evidence. [2 Official Record, *supra,* p 3135 (comments of Everett).]

[17] See also *id.,* p 1444 (comments of Iverson) ("this proposal, in the judgment of the committee, is a safeguard, if you please, against bureaucratic action by an administrative agency which might, so to speak, get the bit in its teeth and run away with it"); *id.,* p 1466 (comments of Shackleton) ("I have heard no lawyers suggest that laws not be reviewed by the courts. When bureaus or bureaucrats can issue rules and regulations which essentially have the effect of laws, they too should be reviewed"); 2 Official Record, *supra,* p 2714 (comment of T. S. Brown) ("this is what we're trying to do, protect the individual against the arbitrary actions of the state").

istrative agency." *Id.,* p 1442 (comments of Kroli-
kowski). In other words, the ratifiers and framers
intended to implement "as a constitutional guar-
antee, certain minimum rights [of review from
administrative agencies] for the citizens of this
state." 2 Official Record, *supra,* p 3135 (comments
of King).[18]

A delegate has noted "the extreme breadth of
applicability of this provision . . . ." Nord, *The
Michigan Constitution of 1963,* 10 Wayne L R 309,
344 (1964). Indeed, delegates, while debating the
provision discussed, inter alia, the workers' com-
pensation system,[19] taxing authority,[20] ratemaking
authorities,[21] state civil service commission,[22] public
service commission,[23] employment security commis-
sion,[24] and the department of revenue.[25] Delegates
also discussed many licensing boards, including
those dealing with alcohol,[26] insurance,[27] real es-
tate,[28] truckers,[29] drivers,[30] and plumbers.[31] The
clear "aim[ ]" of the provision was "to impose upon
all administrative agencies a uniform scope of
review . . . ." 1 Official Record, *supra,* p 1441
(comments of Krolikowski).

---

[18] See also 1 Official Record, *supra,* p 1451 (comments of Boothby)
("All we are saying here is that when an individual acts in the
capacity of a prosecutor, a jury and a judge—and it doesn't matter
whether he is affecting a privilege, a right or a license—we are going
to give that person his day in court").

[19] See, e.g., 1 Official Record, *supra,* p 1441 (comments of Norris).

[20] *Id.*

[21] *Id.*

[22] *Id.,* pp 1441-1442 (comments of Ford).

[23] *Id.,* p 1444 (comments of Leibrand).

[24] *Id.*

[25] *Id.,* p 1446 (comments of Leibrand).

[26] *Id.,* p 1444.

[27] *Id.,* p 1450 (comments of Ford).

[28] *Id.*

[29] *Id.,* p 1444 (comments of Leibrand).

[30] *Id.,* p 1450 (comments of Danhof).

[31] *Id.,* p 1450 (comments of Ford).

Delegate Everett explained "this amendment . . . [grants] a minimum guarantee of the rights of the individuals in these matters. We hope that the legislature will go beyond this and require more. We are only saying that, as a minimum, they *must* do this." 2 Official Record, *supra,* p 3135 (emphasis added). Perhaps most telling, delegate Mahinske remarked that "whether or not the legislature provides for [the substantial evidence standard] in the establishment of one of these bodies, we have [the standard]." 1 Official Record, *supra,* p 1464.[32]

Contrary to defendant's assertion, ensuring judicial review of the actions of administrative agencies that affect the rights of Michigan citizens was the very intent of the convention. The constitution, therefore, mandates review, but permits the Legislature to implement the details of the appellate process. "The phrase 'as provided by law' clearly vests the Legislature with the authority to exert substantial control over the mechanics of how administrative decisions are to be appealed." *McAvoy, supra* at 443. Obviously the constitutional convention did not wish to delve into the details of appellate procedure, e.g., venue, the statute of limitations, or the number of days by which an appeal must be filed, but it clearly intended to ensure that some appellate procedure exist. Indeed, the comments of the convention and the Address to the People reveal that the purpose of the provision was to ensure that the substantial evidence standard of review applied to administrative agencies because the Legislature had failed to do so in some instances. The failure of the Legisla-

---

[32] See also *id.,* p 1447 (comments of Leibrand) ("[the provision] simply sets a minimum standard, a minimum below which the legislature *may not go*" [emphasis added]); 2 Official Record, *supra,* p 3134 (comments of Krolikowski) ("the first sentence . . . *assures* that there shall be a direct judicial review of all decisions, findings, rulings and orders of administrative agencies") (emphasis added).

ture to follow the mandate of the constitution compels the judicial branch to permit judicial review, not abandon it. To now deprive the citizenry of significant judicial review because the Legislature again failed to act in light of the provision makes the constitutional mandate all but a mockery. Afterall, " ' "[a] constitutional provision designed to remove an existing mischief should never be construed as dependent for its efficacy and operation on legislative will." ' " *Ferency v Secretary of State,* 409 Mich 569, 592; 297 NW2d 544 (1980) (citation omitted). The failure of the Legislature to implement the program is simply unconstitutional inaction.[33]

This is a Court of law, not of whim or preference: our duty is to adhere to the dictates of the constitution regardless of our personal preferences or our disagreement with the policies contained therein.[34] In the instant case, the intention of the ratifiers and framers was to guarantee a minimal standard of judicial review for all administrative agencies affecting the rights of Michigan citizens— and we must enforce that intention.[35] Defendant's

---

[33] In fact, defendant's position would permit a Legislature to repeal the statutory right of appeal from even a state agency, e.g., the state teacher tenure commission, MCL 38.121; MSA 15.2021, which was the exact problem the provision addressed.

[34] The question is not whether the constitution ought to have permitted the exercise of this power; but whether, by a fair construction of the language of the instrument, as framed by the convention, and understood and adopted by the people, the power in question has been prohibited. Our province is not to make or modify the constitution, according to our views of justice or expediency, but to ascertain, as far as we are able, the true intent and purpose of the constitution which the people have deemed it just and expedient to adopt. [*People ex rel Twitchell v Blodgett,* 13 Mich 127, 149-150 (1865) (CHRISTIANCY, J.); *id.* at 141 (CAMPBELL, J.); *id.* at 168 (COOLEY, J.).]

[35] Contrary to the fears of the lead opinion, this holding would not require that the Legislature pass laws and the Governor sign them in the instant case. The constitutional requirement that the substantial

attempt to engraft upon the language and inten-
tions of art 6, § 28 meaning almost certainly un-
intended by the framers and ratifiers of the funda-
mental charter must be rebuked. Such interpreta-
tion, as Justice Cooley acknowledged, is in clear
contradiction of the dictates of constitutional con-
struction:

> "Constitutions do not change with the varying
> tides of public opinion and desire; the will of the
> people therein recorded is the same inflexible law
> until changed by their own deliberative action;
> and it cannot be permissible to the courts that in
> order to aid evasions and circumventions, they
> shall subject these instruments, which in the main
> only undertake to lay down broad general princi-
> ples, to a literal and technical construction, as if
> they were great public enemies standing in the
> way of progress, and the duty of every good citizen
> was to get around their provisions whenever prac-
> ticable, and give them a damaging thrust when-
> ever convenient. They must construe them as the
> people did in their adoption, if the means of arriv-
> ing at that construction are within their power."
> [*Lockwood, supra* at 555, quoting *People ex rel Bay
> City v State Treasurer,* 23 Mich 499, 506 (1871).]

Griffin, J., concurred with Riley, J.

Levin, J. (*dissenting*). The question presented
concerns the scope of judicial review of a decision
of a municipal civil service commission. I would
hold that a decision to discharge a civil service
employee after a hearing is subject to judicial

evidence standard apply may be enforced by this Court without such
recourse—judicial review has been mandated by the constitution and
the courts must grant it.

review, pursuant to Const 1963, art 6, § 28,[1] to determine whether it is supported by competent, material, and substantial evidence on the whole record, and not merely to determine whether there is any evidence to support the decision.

I would also hold that the circuit judge did not err in ordering that Marcia Payne be restored to her former position.

**A**

The Board of Civil Service Commissioners of the City of Muskegon sustained the discharge of Marcia Payne from her employment as an administrative secretary in the Civil Service Department.

Payne filed a complaint for superintending control, naming the board as defendant. The circuit judge found that the decision of the board was "not supported by competent, material and substantial evidence from a review of this whole record," that there was "not that quantum of evidence in this record that would warrant discharge," and ordered that the board determine "what discipline, if any, less than discharge, is reasonable under the circumstances pursuant to" the board's rules and regulations.[2]

---

[1] All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record. Findings of fact in workmen's compensation proceedings shall be conclusive in the absence of fraud unless otherwise provided by law. [Const 1963, art 6, § 28.]

[2] The circuit court also awarded Payne back pay. The amount of the back pay is to be reduced to reflect any discipline less than discharge imposed on remand.

The Court of Appeals reversed, stating that while appeals from administrative agencies or tribunals "often pose the question whether there was competent, material, and substantial evidence on the whole record to support the underlying administrative decision," that standard is not applicable where the plaintiff invokes the "extraordinary remedy of superintending control" in a case "where an appeal on the merits is not available."[3]

**B**

I would hold that

—A municipal civil service commission is an administrative "agency existing under the constitution or by law," that its "final decisions, findings, rulings and orders" are "judicial or quasi-judicial and affect private rights or licenses" within the meaning of Const 1963, art 6, § 28,[4] and are therefore "subject to direct review by the courts" although the Legislature[5] has not provided for judicial review, and

—As provided in the constitution,[6] such re-

[3] 193 Mich App 620, 622; 484 NW2d 759 (1992).

The Legislature has not provided for judicial review of a decision of a municipal agency such as the Muskegon Civil Service Commission. MCR 3.302(A) provides, however, that an order of superintending control "enforces the superintending control power of a court over lower courts or tribunals," that a superintending control order replaces the writ of certiorari, and that a complaint for superintending control may not be filed if an appeal or another adequate remedy is available to the party seeking the order.

[4] See n 1 for text.

[5] The constitution, in providing that final decisions, findings, rulings and orders of an administrative agency "shall be subject to direct review by the courts *as provided by law*," contemplates that the Legislature will provide by law regarding the manner in which such judicial review shall occur. But see n 3.

[6] See n 1 for text.

view shall "include, as a minimum, the deter-
mination whether such final decisions, find-
ings, rulings and orders" are "authorized by
law," and, where a hearing is required,[7] such
review shall include "as a minimum" whether
the decision, findings, rulings and orders "are
supported by competent, material and sub-
stantial evidence on the whole record."

I therefore conclude that the circuit court did
not err in reviewing the decision of the Muskegon
Board of Civil Service Commissioners to determine
whether there was competent, material, and sub-
stantial evidence on the whole record to support
the decision to discharge Payne, and not solely to
determine whether there was any competent evi-
dence to support the decision.[8]

I also conclude that the circuit court did not err
in determining that there was not sufficient evi-
dence to justify the decision discharging Payne,

---

[7] Because the rules and regulations of the Muskegon Civil Service
Commission provide for a hearing, there is no need to consider
whether a hearing might be required without regard to whether such
rules and regulations or other governing instrument so provide.

[8] In *MERC v Detroit Symphony Orchestra, Inc,* 393 Mich 116, 124;
223 NW2d 283 (1974), this Court, in affirming a decision of the Court
of Appeals that had reversed a decision of the MERC on the ground
that the findings of fact of the MERC were not supported by substan-
tial evidence, said: "The cross-fire of debate at the Constitutional
Convention imports meaning to the 'substantial evidence' standard in
Michigan jurisprudence. What the drafters of the Constitution in-
tended was a thorough judicial review of administrative decision, a
review which considers the whole record—that is, both sides of the
record—not just those portions of the record supporting the findings
of the administrative agency. Although such a review does not attain
the status of *de novo* review, it necessarily entails a degree of
qualitative and quantitative evaluation of evidence considered by an
agency. Such review must be undertaken with considerable sensitivity
in order that the courts accord due deference to administrative
expertise and not invade the province of exclusive administrative fact-
finding by displacing an agency's choice between two reasonably
differing views. Cognizant of these concerns, the courts must walk the
tightrope of duty which requires judges to provide the prescribed
meaningful review."

and in remanding for imposition of a lesser penalty.

I would reverse the decision of the Court of Appeals and reinstate the judgment entered by the circuit court.

I

The Court of Appeals observed correctly that a writ of superintending control is the means by which a circuit court exercises its power of judicial review of a decision of an administrative tribunal where an appeal is not specifically provided for by statute.[9]

The Court of Appeals erred, however, in concluding that, because superintending control replaces certiorari, and issuance of a writ of superintending control may be extraordinary, judicial review is always limited to questions of law[10] and, hence, to a determination whether there is any competent evidence to support a finding of fact.

As set forth in the lead opinion, there are a number of decisions of this Court, preceding the adoption of the 1963 Constitution, reviewing factual determinations of a municipal civil service commission. The review by this Court was not solely to determine whether there was *any competent evidence* to support the decision, but rather

---

[9] See n 3.

[10] The Court of Appeals said that an order of superintending control replaces and is comparable to a writ of certiorari, and review is "limited only to questions of law," 193 Mich App 621, and remanded to the circuit court to review the decision of the Board to determine whether "there is any competent evidence on the record" that Payne, "after a warning, failed to perform her work completely . . . ." *Id.* at 623.

The Court added that the "circuit court should guard against substituting its judgment of the facts for that which was made by the board." *Id.*

was to determine whether there was *substantial evidence* to support the decision.[11]

Now, however, for reasons about to be stated, the constitutional standard, "competent, material and substantial evidence on the whole record," is applicable to judicial review of a decision discharging a civil service employee following a hearing required by the rules and regulations of the civil service commission.

II

The board contends that the constitutional standard applies only to state administrative agencies, not municipal administrative agencies. It is urged that an administrative agency does not "exist under the constitution or by law" unless the administrative agency is created by the constitution or by an act of the Legislature. I would not read the words "existing under the constitution or by law" so narrowly.[12]

---

[11] In *Detroit Public Welfare Comm v Detroit Civil Service Comm,* 289 Mich 101, 108; 286 NW 173 (1939), this Court said: "We are only concerned, however, with the determination of whether or not there was substantial evidence to support the finding of the commission."

In *Schubert v Dearborn Civil Service Bd,* 311 Mich 553, 561; 19 NW2d 96 (1945), this Court said: "The only question requiring determination on this appeal is whether or not there was competent and substantial testimony supporting the finding of the civil service board."

In *O'Dell v Flint Civil Service Comm,* 328 Mich 631, 636; 44 NW2d 157 (1950), this Court said: "It is the rule that on review by the circuit court on writ of certiorari from a civil service commission the function of the court is to consider whether or not there is substantial evidence to support the finding of the civil service commission."

[12] The words "existing under the constitution or by law" exclude decisions of private organizations from judicial review, e.g., decisions of private clubs, the Elks, the Boy Scouts, the Girl Scouts, a country or city club. Those organizations may have rules and regulations providing for hearings and for decisions that might result in expulsion. The framers did not want to provide for judicial review of those decisions.

Governmental decisions that can be made without a hearing are

I would hold that an agency "exists under the constitution or by law" at least where the constitution or an act of the Legislature provides for a governmental function to be discharged by the agency, and that the constitutional standard governs judicial review where there are provisions for a hearing respecting the exercise of the governmental function and for decisions, findings, rulings, or orders following the hearing that are judicial or quasi-judicial and affect private rights or licenses.

A

In the instant case, both the constitution and an act of the Legislature authorize local units of government to provide for a merit or civil service system for their employees. The constitution provides that the governing body of a city or of other local governmental units may establish, modify or discontinue a merit system for its employees.[13] The Home Rule Act provides that a home rule city may in its charter provide for a system of civil service for its employees.[14]

---

also not subject to judicial review under the competent, material, and substantial evidence standard.

[13] Article 11, § 6, of the 1963 Constitution, captioned "Merit systems for local governments," provides:

By ordinance or resolution of its governing body which shall not take effect until approved by a majority of the electors voting thereon, unless otherwise provided by charter, each county, township, city, village, school district and other governmental unit or authority may establish, modify or discontinue a merit system for its employees other than teachers under contract or tenure. The state civil service commission may on request furnish technical services to any such unit on a reimbursable basis.

[14] Each city may in its charter provide:

* * *

(h) For a system of civil service for city employees, including

It is therefore clear that administering a municipal civil service commission is a governmental function authorized and provided for by both the constitution and by law, and that a local civil service commission is an "agency existing under the constitution or by law" within the meaning of art 6, § 28 of the 1963 Constitution.

B

In stating in the constitution that the governing body of a local unit of government may, by ordinance or resolution, establish, modify or discontinue a merit system, the framers of the constitution indicated that the details of the system were to be spelled out by ordinance or resolution. Similarly, in stating that the charter of a city may provide for a system of civil service, the Legislature indicated that the details of the system were to be spelled out in the charter or pursuant to its provisions. The framers of the constitution and the Legislature thereby indicated that local units of government were authorized to provide for the particular terms and provisions of their merit or civil service systems. An agency created and acting under rules and regulations adopted pursuant to such a delegation of authority is an agency "existing under the constitution or by law."

The City of Muskegon, in establishing a civil service system and rules and regulations therefor pursuant to the delegation of authority set forth in the constitution and in the Home Rule Act, acted

---

employees of that city's board of health, and employees of any jail operated or maintained by the city. Charter provisions heretofore or hereafter adopted providing for a system of civil service for employees of a local health board are valid and effective. [MCL 117.4i(h); MSA 5.2082(h).]

"under the constitution or by law." The resulting
Muskegon Board of Civil Service Commissioners is
an "agency existing under the constitution or by
law" within the meaning of art 6, § 28.[15]

The Muskegon civil service rules and regulations
provide for a hearing when an employee appeals
from a decision discharging the employee from
employment by the city. The decision of the Mus-
kegon Board of Civil Service Commissioners sustain-
ing the disciplinary action against Payne is a
quasi-judicial decision affecting her "private"
rights under the Muskegon civil service system.[16]

C

The question whether an appeal by a local gov-
ernmental employee from a decision of a civil
service commission would be subject to judicial
review in accordance with the "competent, ma-
terial and substantial evidence" standard arose at
the Constitutional Convention. Speaking for the

[15] The Court of Appeals, recognizing that review of a decision of a
municipal board of zoning appeals is by application for superintend-
ing control "which replaces certiorari," held that the constitutional
standard set forth in Const 1963, art 6, § 28 establishes the minimum
scope of judicial review. *Puritan-Greenfield Improvement Ass'n v Leo,*
7 Mich App 659, 665; 153 NW2d 162 (1967); *Lorland Civic Ass'n v
DiMatteo,* 10 Mich App 129, 135; 157 NW2d 1 (1968); *Alastra v City of
Warren,* 68 Mich App 594, 596-597; 243 NW2d 675 (1976); *Dearden v
Detroit,* 70 Mich App 163, 171; 245 NW2d 700 (1976), rev'd on other
grounds 403 Mich 257; 269 NW2d 139 (1978). *Alastra* was written by
Chief Judge DANHOF, the Chair of the Committee on the Judicial
Branch at the Constitutional Convention of 1961.

The Court has also said that the standard set forth in art 6, § 28
establishes the minimum scope of review of a decision of a municipal
civil service commission. *Montiy v East Detroit Civil Service Bd,* 54
Mich App 510; 221 NW2d 248 (1974); *Rinaldi v Livonia,* 69 Mich App
58; 244 NW2d 609 (1976).

[16] This Court has indicated that a decision or finding is "judicial or
quasi-judicial in nature" if there was a hearing and the decision-
maker engaged in factfinding. *People ex rel Clardy v Balch,* 268 Mich
196, 200; 255 NW 762 (1934); *Talbert v Muskegon Construction Co,*
305 Mich 345, 348; 9 NW2d 572 (1943); *Viculin v Dep't of Civil
Service,* 386 Mich 375; 192 NW2d 449 (1971).

committee of the Constitutional Convention that formulated the new constitutional standard, a delegate indicated that it was contemplated that there would be judicial review of the decision of a municipal civil service commission pursuant to the new constitutional standard. Specifically, the delegate responded in the affirmative to the question whether, on appeal to a court from a decision of a local civil service commission disciplining a governmental employee, such as a policeman, there would be a "greater test" than whether "the facts in the record clearly tend by competent evidence" and "fair probative value" to support the finding of the civil service commission.[17]

---

[17] *Mr. Ford:* Perhaps it may seem out of place for me to be asking this question now, since I didn't attend the meeting at which the committee reviewed this language, but Mr. Krolikowski, the present rule of law with respect, for example, to an appeal which is a one way appeal from the suspension of a policeman under civil service statute or charter provision, is that he has a right to appeal from the determination by the civil service commission which in the first instance is an appeal from the person who removed him or the board that removed him to the circuit court and the circuit court is bound by the findings of fact, and the examination of the findings of fact has in the past been limited to a finding that the facts in the record clearly tend by competent evidence to support the finding made by the civil service commission. Is it your thought that now we would be proceeding in a manner where in addition to showing that there was fair probative value that there would have to be some greater test met by the civil service commission in sustaining its action, or sustaining the action of the removing authority who fired a policeman, for example, for drunkenness?

*Chairman Van Dusen:* Mr. Krolikowski.

*Mr. Krolikowski:* Yes, I think they would. First of all, this language will negate the possibility of conclusive findings of fact on the part of an administrative agency.

*Mr. Ford:* I just sent for a volume of the reports, but I find a headnote here indicating that our court has in the past held that a legislative attempt to create such a rule was violative of the constitution and it seems to indicate that it is a violation of the separation of powers because of the fact that the court is substituting its discretion for that of an administrative body. Was this question gone into at all when your subcommittee was working on this?

*Mr. Krolikowski:* I think that there is a line of judicial

### III

I turn to a consideration of whether the decision to discharge Payne was supported by competent, material and substantial evidence.

### A

The board's rules and regulations provide that there are three groups of offenses. Group one includes the least severe offenses, such as habitual tardiness, unexcused absences, abusive coffee breaks. Group one also includes as an offense "[f]aulty work." An employee who commits one group-one offense may receive a warning. An employee who commits repeated group-one offenses is not subject to discharge until the fifth offense.

Group two concerns the next most severe offenses, such as injurious or dangerous pranks, fighting on the premises, and wilful destruction of city property. An employee who commits a single group-two offense is subject to a three-day suspension without pay. A repeated group-two offender is not subject to discharge until the third offense.

Group three includes the most serious transgressions, such as violations of the Civil Rights Act, knowingly falsifying records, consumption of alcoholic beverages on the job. Group three also includes the offense of failing to perform work duties completely and efficiently after receiving a warn-

thinking that would sustain that theory. However, I think that you must recognize that the concept of separation of powers is defined in the organic law of the state. Now, if this proposal is adopted, I submit that it would be conclusive on the question of separation of powers so that any cases to which you advert would be obviated by a constitutional provision which defined the separation of powers. This committee proposal would accomplish that fact. [1 Official Record, Constitutional Convention 1961, pp 1441-1442.]

ing. A person who commits a group-three offense is subject to immediate discharge.

The rules and regulations provide that the board may treat a group-three offense as a group-two or a group-one offense, and may treat a group-two offense as a group-one offense. The board could thus have treated Payne's failure to perform her duties as a group-one or a group-two offense.

B

Payne received a letter of reprimand in early June, 1989, concerning her failure to record certain information and her failure to keep secure a number of employment applications. Seven days later, she received a review with ratings ranging from acceptable to outstanding in eighteen of twenty areas of job performance.[18]

Payne was discharged July 17 because she had not rectified the deficiency in recording information and had again left employment applications unsecured on her desk.

Truman Forest's belief that Payne had again left applications unsecured on her desk was mistaken. Another employee had left the applications on Payne's desk after she had left on vacation. Forest refused to provide Payne an opportunity to show that another employee had left the applica-

---

[18] Payne's supervisor, Truman Forest, made the following observations concerning Payne's performance:

> You came to this office with very fine skills in dealing with the department's clients. You are helpful and cheerful at all times when dealing with those who seek assistance or direction.
>
> You've been eager to develop your computer skills and have given of your own time to attend computer classes which is greatly appreciated. . . .
>
> You have been quick to grasp the overall "flow" of the operation except in two very important areas [the filing of employment applications and accuracy in typing, etc.]. . . .

tions on her desk. At the hearing before the board, Forest insisted that he would have discharged Payne even if he had known that she had not left the applications unsecured.

While Payne's failure to update the department's records may have justified some disciplinary response, I agree with the circuit judge that there was not competent, material and substantial evidence on the whole record justifying dismissal. Updating the department's records was an important task, but Payne's failure was not tantamount to a group-three offense, such as violation of the Civil Rights Act, stealing city property, or drinking on the job.

Payne was on vacation for the two-week period preceding her discharge on July 17. Thus, less than a month intervened between the warning in early June and the date she left on vacation. The record shows that there were a number of tasks that were given to her to perform in that approximately four-week period and that she in good faith thought that they had a higher priority.

C

The lead opinion holds that the penalty assessed by the board is "not subject to substantial evidence review," stating that "[t]he determination of the appropriate penalty did not involve any questions of fact because the commission's rules allow it to terminate the plaintiff under the facts she conceded."[19]

The lead opinion's holding ignores that the constitutional standard, "competent, material, and substantial evidence on the whole record" applies

[19] *Ante,* p 696.

not only to findings of fact but also to *"decisions,"* "rulings" and "orders."[20]

The lead opinion adverts to cases in other jurisdictions, including federal cases, but on the central question whether the *decision* of the Board of Civil Service Commissioners, or only its findings of fact, are subject to judicial review, the Court cites no authority for its conclusion that the decision itself is not subject to judicial review.[21]

---

[20] The record of the Constitutional Convention of 1961 establishes that judicial review pursuant to art 6, § 28 is not limited to findings of fact. See 1 Official Record, Constitutional Convention 1961, p 1466; 2 Official Record, Constitutional Convention 1961, p 3243.

[21] The lead opinion writes:

> The determination of the appropriate penalty did not involve any questions of fact because the commission's rules allow it to terminate the plaintiff under the facts she conceded. Consequently, this determination is not subject to substantial evidence review. Cf. *NLRB v Curtin Matheson Scientific, Inc,* 494 US 775, 778, n 2; 110 S Ct 1542; 108 L Ed 2d 801 (1990) (substantial evidence review applies only to evidentiary questions); *Deering v Unionville-Sebewaing Area Schools,* 97 Mich App 629, 631; 296 NW2d 131 (1980) (factual findings must be supported by substantial evidence). [*Ante,* pp 696-697.]

Neither *NLRB v Curtin Matheson Scientific* nor *Deering* are in point. In *NLRB v Curtin Matheson Scientific,* the United States Supreme Court held that the NLRB acted within its discretion in refusing to presume that striker replacements oppose the union. In so holding, the Court reviewed the reasonableness of the board's conclusion. It did not say or hold that the board's decision was beyond judicial review. Justice Marshall's opinion was joined by Chief Justice Rehnquist and Justices Brennan, White, and Stevens. The Chief Justice wrote a separate concurring opinion. Justice Blackmun dissented, and Justice Scalia, joined by Justices O'Connor and Kennedy, also dissented. The care with which the majority and dissenters reviewed the reasonableness of the board's decision stands in stark contrast to the majority's ipsi dixit that the "determination of the appropriate penalty" is not subject to judicial review.

In *Deering,* the issue addressed in the opinion of the Court was whether there was competent, material, and substantial evidence on the record considered as a whole to support the MERC's determination that Deering's discharge was not related to or precipitated by his efforts at organizing his co-workers to obtain higher wages and increased benefits. The Court found that there was adequate evidence that Deering was discharged for other reasons. The question whether a lesser discipline should have been imposed by Deering's employer

Contrary to the suggestion in the lead opinion, federal courts do review an agency's decision discharging an employee to determine whether the punishment was proportionate. In *Brown v United States Postal Service,* 860 F2d 884 (CA 9, 1988), the United States Court of Appeals for the Ninth Circuit reversed a decision of the United States District Court affirming a decision of the Federal Employee Appeals Authority upholding the Postal Service's decision to discharge Brown. The court said that it defers to an agency's judgment "unless the penalty is so harsh or disproportionate to the offense as to constitute an abuse of discretion," and that in "determining whether a penalty is disproportionate to the offense," courts consider a number of factors:

> "We have said that we will defer to the judgment of the agency as to the appropriate penalty for employee misconduct, unless its severity appears totally unwarranted in light of such factors as the range of permissible punishment specified by statute or regulation, the disciplined party's job level and nature, his record of past performance, the connection between his job and the improper conduct charges, and the strength of the proof that the conduct occurred." [*Id.,* p 888.]

The court said that although substantial evidence supported the determination that Brown had wilfully failed to follow established postal procedures in handling postage-due transactions, and such "misconduct was serious in light of Brown's duties at the cash drawer, our analysis of the other factors persuades us that Brown's termination was too harsh, particularly given that the USPS could

was not addressed in this appeal from the MERC's decision, finding that his employer had not engaged in an unfair labor practice in discharging him for a protected activity.

have transferred him to non-cash handling
duties." *Id.,* p 888.[22]

---

[22] The lead opinion states, correctly, that there is no statutory
"Michigan counterpart" to 5 USC 7703(c), cited in *Brown,* and that
the Ninth Circuit, in *Brown,* reviewed only the factual findings for
substantial evidence, and did not "review the proportionality of the
punishment for substantial evidence." The lead opinion concludes
that "the *Brown* decision confirms that the determination of the
appropriate penalty is not subject to substantial evidence
review . . . ." *Ante,* p 696, n 12.

The federal statute, 5 USC 7703(c), provides that the appellate
court "shall review the record and hold unlawful and set aside any
agency action, findings, or conclusions found to be—

   (1) arbitrary, capricious, an abuse of discretion, or otherwise
not in accordance with law;
   (2) obtained without procedures required by law, rule, or
regulation having been followed; or
   (3) unsupported by substantial evidence . . . .

Brown argued, and the Ninth Circuit agreed, that the "agency
abused its discretion because the punishment imposed was dispropor-
tionate to his alleged offense." *Brown, supra,* p 888.

Professor Kenneth Culp Davis observed that the federal courts
often apply both the substantial evidence and arbitrary and capri-
cious standards without discernible differentiation. 5 Davis, Adminis-
trative Law (2d ed), § 29:7, pp 356-363.

The United States Court of Appeals for the District of Columbia
Circuit said that this Court has embraced the "emerging consensus of
the Courts of Appeals that the distinction between the arbitrary and
capricious standard and substantial evidence review is largely
semantic . . . ." *Pacific Legal Foundation v Dep't of Transportation,*
193 US App DC 184, 189, n 35; 593 F2d 1338 (1979). But the Fifth
Circuit observed that the substantial evidence standard is more
rigorous than the arbitrary and capricious standard. *Corrosion Proof
Fittings v EPA,* 947 F2d 1201, 1213-1214 (CA 5, 1991).

The somewhat differing judicial views concerning how closely appel-
late courts should review agency action under the substantial evi-
dence/arbitrary and capricious standards underscores that both stan-
dards concern the *level,* and not the subject, of review. The federal
statute, like Const 1963, art 6, § 28, provides for judicial review of
agency *decisions* ("agency action . . . or conclusions") as well as
factual "findings." Although *Brown* and other federal courts may
apply a substantial evidence standard only in reviewing factual
findings of an agency, they recognize an obligation to review an
agency decision for proportionality. That is what the Ninth Circuit
did in *Brown,* that is what Const 1963, art 6, § 28 obliges this Court to
do in the instant case, and the lead opinion errs in failing to observe
the constitutional mandate and in ignoring *Brown* and other federal
decisions simply because they may have reviewed an agency decision
under a standard other than the substantial evidence standard.

The Ninth Circuit, paralleling the decision of the circuit judge in this case, reversed Brown's dismissal, declared that he was entitled to back pay and reinstatement of employment in some capacity in the Postal Service, and remanded the case for reconsideration of the appropriate disciplinary action.[23]

D

In three cases decided after the adoption of the 1963 Constitution, this Court, without referring to Const 1963, art 6, § 28, reversed *decisions* of a municipal civil service commission sustaining the discharge of employees because this Court found that the penalty of discharge was disproportionate to the offense.[24]

In *Fannon v Southfield,* 405 Mich 558; 275

---

[23] Decisions of federal appellate tribunals upholding the discharge of federal employees were reversed on judicial review of the punishment in the following federal cases: *Francisco v Campbell,* 625 F2d 266, 270 (CA 9, 1980) (civilian naval employee; although her "transgression [disobeying authority] was not trivial," such a harsh penalty was unlikely to deter others from committing similar transgressions, and Francisco had twenty-three years of unblemished and apparently distinguished public service); *Miguel v Dep't of the Army,* 727 F2d 1081 (CA Fed, 1984) (a civilian employee was discharged on the basis of unauthorized possession of government property; Miguel had a long record of outstanding service, and the property that she wrongly possessed was worth very little); *Hagmeyer v Dep't of Treasury,* 757 F2d 1281, 1285 (CA Fed, 1985) (employee had encouraged a job applicant to submit an inaccurate form; the one legitimate charge left standing against Hagmeyer did not warrant discharge because "Hagmeyer's action represents immaturity rather than culpability, particularly in light of his good record"); *Boyce v United States,* 543 F2d 1290, 1291-1295 (Ct Cl, 1976) (an employee had failed to file income tax returns; the failure to file tax returns was not wilful, the amount of taxes involved was de minimis, and the violations were far less severe than another violator).

[24] Cf. *Lakeshore Bd of Ed v Grindstaff (After Second Remand),* 436 Mich 339; 461 NW2d 651 (1990), in which this Court held that the State Tenure Commission may reduce a discipline of a tenured teacher imposed by a school board from discharge to suspension where it finds that the charged misconduct, while proven, was not reasonable and just cause for discharge.

NW2d 256 (1979), the Southfield Civil Service Commission affirmed a *decision* to discharge Fannon for violating five of the city's civil service rules. The circuit court and the Court of Appeals affirmed. This Court reversed.

This Court first dismissed four of the five charges against Fannon. The Court, however, sustained the commission's finding "of Fannon's culpability for failing to directly answer questions as to the release of" a list of names. *Id.* at 561-562. The commission's rules provided that this offense was one punishable by discharge.[25] Nonetheless this Court held that " '[d]ischarge was manifestly an excessive and arbitrary discipline unjustified on this record.' " *Id.,* p 560. The Court remanded the case to the Southfield Civil Service Commission so that the commission could "reconsider Fannon's punishment . . . ." *Id.* at 562.

Thus, in a similar case commenced by filing a complaint seeking a writ of superintending control from the decision of a local civil service commission, this Court made an evaluation of the fairness of the punishment, although the Court accepted that Fannon had committed a violation for which discharge was a permissible sanction.

Similarly, in *Konyha v Mt Clemens Civil Service Comm,* 393 Mich 422; 224 NW2d 833 (1975), this Court reversed the *decision* of a civil service commission that a firefighter should be discharged for sleeping through roll call. The Court said:

---

[25] Section 12.1 of the commission's rules stated as follows:

> The tenure of everyone holding office, place, position or employment in the City's service shall be only during good behavior . . . and any such person may be removed or discharged, suspended without pay, deprived of vacation privileges or other special privileges for . . . violation of the provisions of the rules of the Civil Service Commission, of the City Charter . . . . [*Id.,* p 560.]

One can appreciate the chief's concern that an oversleeping firefighter, causing even the slightest delay in an emergency situation, may jeopardize the safety of the community and of his fellow officers. It does not follow, however, that Konyha's failure to be present at this routine roll call impaired the safety of anyone or is sufficiently indicative of potential impairment of safety to justify this extreme punishment. [*Id.* at 431.]

The Court remanded the case to the Mt. Clemens Civil Service Commission "to determine a proper period of suspension for" this offense. *Id.*[26] And in *Brown v Dep't of State Police*, 392 Mich 811 (1974), this Court reversed a decision of the Court of Appeals and set aside an order of the State Civil Service Commission sustaining the discharge of a trooper for failing to follow rules and regulations because "[d]ischarge was manifestly an excessive and arbitrary discipline unjustified on this record."

I would reverse the decision of the Court of Appeals, and reinstate the judgment entered by the circuit court.

MALLETT, J., concurred with LEVIN, J.

[26] This case arose under the firemen and policemen's civil service act, MCL 38.501 *et seq.*; MSA 5.3351 *et seq.* Under that act, an officer can only be disciplined for cause. In the Court's words, that meant that

[a] written statement of charges and the reasons for the disciplinary action must be furnished. The appointing/removing authority bears the burden of justifying its action. [*Id.* at 428.]

Konyha's offense of sleeping through roll call was "cause" for discipline. Although the commission had "cause" to discipline Konyha, this Court nevertheless reviewed the record to determine whether discharge was justified.