# Syllabus

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

PEGASUS WIND, LLC v TUSCOLA COUNTY

Docket No. 164261. Argued on application for leave to appeal December 6, 2023. Decided April 9, 2024.

Pegasus Wind, LLC, brought an action in the Tuscola Circuit Court against Tuscola County, appealing the decision of intervenor, the Tuscola Area Airport Zoning Board of Appeals (the AZBA), to deny eight variance applications for wind turbines within the Tuscola Area Airport zoning area. In June 2019, Pegasus sought variances from the AZBA for 33 wind turbines near the Tuscola Area Airport. The AZBA denied the variances. Pegasus appealed in the Tuscola Circuit Court, and the court reversed the AZBA's decision. In October 2019, Pegasus submitted eight additional variance applications—the variances at issue in this appeal—for the construction of eight additional wind turbines. The AZBA held hearings over a two-day period in which it heard testimony for and against the requested variances. In support of its variance requests, Pegasus submitted a determination of "no hazard" from the Federal Aviation Administration (the FAA) for the proposed wind turbines and a letter from the Michigan Department of Transportation confirming that it concurred with the FAA's determination of no hazard. In contrast to those conclusions, at least two pilots testified that the wind turbines would create additional risk for planes flying in and out of the airport; Pegasus offered expert testimony to refute the pilots' testimony. In finding that a grant of the requested variances would be contrary to the public interest, the AZBA determined that the wind turbines would pose a danger to pilots during in-flight emergencies; that pilots operating under visual flight rules (VFR) would be unable to comply with visibility, cloud-clearance, and minimum altitude regulations during low-visibility periods, leading to a potential choke point and conflict with aircraft operating under instrument flight rules; that the 300-foot increase in minimum descent altitude would create additional difficulty and risk for aircraft attempting a certain type of landing; and that the turbines' impact on the airport's primary radar would interfere with the airport's ability to locate aircraft not equipped with transponders or similar technology. On the basis of those findings, the AZBA denied Pegasus's request for the eight variances. Pegasus appealed in the Tuscola Circuit Court. The court, Amy G. Gierhart, J., held that the AZBA's denial of those variances was supported by substantial, competent, and material evidence that Pegasus had failed to establish three of the four criteria necessary for a variance. More specifically, the circuit court concluded that Pegasus failed to establish that (1) there was a practical difficulty in the literal enforcement of the ordinance, (2) the variances would not be against the public interest and flight-approach protection, and (3) granting the variances would be in accordance with the spirit

of the ordinance. However, the court reversed the AZBA's determination that granting the variances would not do substantial justice. Pegasus moved for reconsideration, and the court denied the motion. Pegasus appealed by right. In a split published decision, the Court of Appeals, RICK, P.J., and SHAPIRO, J. (MURRAY, J., dissenting), reversed in part and remanded, holding that the variances should have been granted. 340 Mich App 715 (2022). In reaching that conclusion, the Court of Appeals determined, in part, that the circuit court erred when it concluded that the AZBA's determination—i.e., that Pegasus failed to show that the variances would not be contrary to the public interest or flight-approach protection—was supported by substantial, competent, and material evidence. The AZBA sought leave to appeal in the Supreme Court, which ordered and heard oral argument on whether to grant the AZBA's application for leave to appeal or take other action. 511 Mich 977 (2023).

In an opinion by Justice ZAHRA, joined by Chief Justice CLEMENT and Justices VIVIANO, BERNSTEIN, CAVANAGH, and WELCH, the Supreme Court, in lieu of granting leave to appeal, *held*:

Appellate courts review a circuit court's determinations regarding the findings of a zoning board of appeals to assess whether the circuit court applied the correct legal principles and whether it misapprehended or grossly misapplied the substantial-evidence test; although there is a qualitative element to the substantial-evidence test, an appellate court may not conduct the equivalent of de novo review of the facts. Relevant here, the circuit court applied the correct legal principles and did not grossly misapply the substantial-evidence test to the AZBA's finding that Pegasus failed to show that the requested variances would not be contrary to the public interest. By essentially performing a de novo analysis of the evidence and making its own factual findings, the Court of Appeals majority erred by going beyond the question of whether the circuit court properly applied the substantial-evidence test. The Court of Appeals' conclusion that the circuit court erred by affirming the AZBA's finding that the variances would be contrary to the public interest was reversed; the AZBA's denial of the variances was reinstated; and the remainder of the Court of Appeals opinion was vacated.

1. When reviewing a decision of a zoning board of appeals, a circuit court's review is limited to whether the decision is authorized by law and supported by competent, material, and substantial evidence on the whole record, which includes both sides of the record and not just those portions of the record supporting the findings of the administrative agency. The term "substantial evidence" means evidence that a reasonable person would accept as sufficient to support a conclusion. While the substantial-evidence test requires more than a scintilla of evidence, it may be substantially less than a preponderance. A zoning board of appeals' factual findings are entitled to deference, and a court will not set aside findings merely because alternative findings also could have been supported by substantial evidence on the record. The Supreme Court and the Court of Appeals review a circuit court's determinations regarding a zoning board of appeals' findings to assess whether the circuit court applied correct legal principles and whether it misapprehended or grossly misapplied the substantial-evidence test to the zoning board of appeals' factual findings. The latter standard is identical with the clear-error standard of review. A finding is clearly erroneous if the reviewing court, on the whole record, is left with the definite and firm conviction that a mistake has been made. Accordingly, although there is a qualitative element to the substantial-evidence test, an appellate court may not conduct the equivalent of de novo review of the facts.

2. Zoning regulations near Michigan airports are governed by the Airport Zoning Act (the AZA), MCL 259.431 *et seq.* The act is particularly concerned with airport hazards, which MCL 259.433 defines as any structure or tree or use of land or of appurtenances thereof which obstructs the air space required for the safe flight of aircraft in landing or taking off at an airport or is otherwise hazardous or creates hazards to such safe landing or taking off of aircraft. A local political subdivision containing "an airport hazard area" may adopt airport zoning regulations, including airport zoning ordinances. The AZA allows boards of appeals to be created that then review the administration of airport zoning regulations. Relevant here, an airport zoning board of appeals (like the AZBA) has authority to hear and decide requests for variances from local airport zoning ordinances. Under MCL 259.454(1), four requirements must be met to obtain a variance under the AZA: (1) a literal application or enforcement of the regulations would result in practical difficulty or unnecessary hardship; (2) the relief granted would not be contrary to the public interest; (3) the relief granted would do substantial justice; and (4) the relief granted would be in accordance with the spirit of the regulations. If an applicant satisfies the four criteria, the requested variance should be granted. Conversely, if an applicant fails to show any one of the four criteria, the zoning board of appeals is not required to grant the variance.

3. At issue here was whether the AZBA erred by finding that granting the variances would be contrary to the public interest. In reviewing that finding, the circuit court properly stated the substantial-evidence test and properly considered the whole record before affirming the AZBA's denial of the requested variances. The record contained evidence that the wind turbines could cause dangers to pilots experiencing in-flight emergencies, that the need to avoid the turbines might create a choke point for pilots flying under VFR restrictions, that the increased minimum descent altitude created a danger for a certain type of approach, and that the turbines would cause interference with the airport's primary radar. The AZBA's findings were entitled to deference, and although the circuit court's examination of the evidence could have been clearer and more comprehensive, the circuit court did not misapprehend or grossly misapply the substantial-evidence test when it reviewed the AZBA's findings. Accordingly, the circuit court did not clearly err when it affirmed the AZBA's finding that Pegasus failed to show that the requested variances would not be contrary to the public interest. In light of that conclusion, the AZBA's denial of the variances was reinstated. In holding to the contrary, the Court of Appeals majority went beyond the question of whether the circuit court properly applied the substantial-evidence test; instead, the Court of Appeals essentially performed a de novo analysis of the evidence and made its own factual findings. Stated differently, the Court of Appeals identified evidence contrary to the evidence on which the AZBA relied and declared the contrary evidence dispositive; in doing so, the Court of Appeals did not apply the correct standard of review. That the Court of Appeals couched its decision in terms of substantial-evidence review did not change the nature of its analysis.

Court of Appeals' conclusion that the circuit court erred by affirming the AZBA's finding that the variances would be contrary to the public interest reversed, AZBA's denial of the variances reinstated, and remainder of the Court of Appeals opinion vacated as unnecessary.

Justice BOLDEN, dissenting, disagreed with the majority's conclusion that the Court of Appeals applied the incorrect legal standard by exceeding its appellate role when reviewing the

evidence. The Court of Appeals majority properly reviewed the whole record, applied the proper analysis, and correctly concluded that the AZBA findings were not supported by substantial, competent, and material evidence. Justice BOLDEN would have denied the AZBA's application for leave to appeal.

# OPINION

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

FILED April 9, 2024

STATE OF MICHIGAN

SUPREME COURT

PEGASUS WIND, LLC,

       Plaintiff-Appellee,

v                           No. 164261

TUSCOLA COUNTY,

       Defendant-Appellee,

and

TUSCOLA AREA AIRPORT ZONING
BOARD OF APPEALS,

       Intervenor-Appellant.

BEFORE THE ENTIRE BENCH

ZAHRA, J.

     In this case we consider whether intervenor, the Tuscola Area Airport Zoning Board

of Appeals (the AZBA), was required to grant variances for the construction of eight wind

turbines near the Tuscola Area Airport. After an evidentiary hearing, the AZBA denied the variances. The circuit court affirmed the denial. But in a split published decision, the Court of Appeals reversed, holding that the variances should have been granted.[1] The AZBA sought leave to appeal in this Court, and we ordered oral argument on the application.

We conclude that the Court of Appeals applied the incorrect standard of review when it considered the lower adjudicators' conclusions that the variances would be "contrary to the public interest[.]"[2] The AZBA needed to support its findings with "competent, material and substantial evidence on the whole record."[3] The circuit court concluded that the AZBA had done so.[4] On appeal, the Court of Appeals was tasked with, among other things, determining whether the circuit court had "misapprehended or grossly misapplied the substantial evidence test" to the AZBA's findings.[5] Rather than apply that legal standard, the Court of Appeals majority effectively conducted a de novo review of the proceedings by reweighing the evidence and making its own findings about which pieces of evidence were more or less probative. Although the substantial-evidence

---

[1] *Pegasus Wind, LLC v Tuscola Co*, 340 Mich App 715, 721; 988 NW2d 17 (2022).

[2] MCL 259.454(1).

[3] Const 1963, art 6, § 28; *Dowerk v Oxford Charter Twp*, 233 Mich App 62, 72; 592 NW2d 724 (1998).

[4] As explained later in this opinion, the circuit court held that the AZBA did not provide substantial evidence to support one of its findings. Because that finding did not change the ultimate decision, however, the circuit court still affirmed the AZBA.

[5] *Hughes v Almena Twp*, 284 Mich App 50, 60; 771 NW2d 453 (2009) (quotation marks and citation omitted).

standard requires review of the record, the scope and nature of the Court of Appeals' evidentiary review exceeded that Court's appellate role. For that reason, we reverse the Court of Appeals in part and reinstate the AZBA's findings. Because this reversal necessarily leads to a denial of the variances, we vacate the rest of the Court of Appeals opinion.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff Pegasus Wind, LLC, is building a commercial wind energy system in Tuscola County, defendant in this case. Its plans include the construction of several wind turbines in the Tuscola Area Airport zoning area. The AZBA is the local zoning authority responsible for deciding whether to grant variances from airport zoning regulations under the Airport Zoning Act (the AZA).[6] In June 2019, Pegasus applied to the AZBA for variances to build 33 wind turbines in the airport zoning area. Variances were necessary because the turbines would violate the height restrictions and minimum descent requirements of the local airport zoning ordinance. The AZBA denied the variances, and Pegasus appealed that decision in the circuit court, which reversed. After the parties exhausted their appellate rights,[7] the AZBA issued the 33 variances.[8]

The dispute underlying this appeal began in October 2019, when Pegasus applied for variances to build eight additional turbines in the airport zoning area. Pegasus also

---

[6] MCL 259.454; MCL 259.457.

[7] *Pegasus Wind, LLC v Tuscola Area Airport Zoning Bd of Appeals*, 507 Mich 871 (2021); *Pegasus Wind, LLC v Tuscola Area Airport Zoning Bd of Appeals*, unpublished order of the Court of Appeals, entered February 26, 2020 (Docket No. 351915).

[8] These 33 variances are not at issue in this appeal.

submitted determinations of "no hazard" from the Federal Aviation Administration (the FAA) and a letter from the Michigan Department of Transportation stating that it would issue permits under the Tall Structure Act[9] if the AZBA granted the variances.

In January 2020, the AZBA held public hearings to address the requested variances. Witnesses testified for and against the variances, some arguing that the proposed wind turbines would pose a significant hazard to the airport and some contending that such risk was nonexistent or overblown. After considering the available evidence, the AZBA denied the variance applications, finding that Pegasus had met none of the four statutory requirements for a variance under the AZA.[10]

Once again, Pegasus appealed the AZBA's decision in the circuit court. This time, however, the circuit court affirmed the AZBA's variance denials. Although the circuit court saw no substantial evidence in the record supporting the AZBA's conclusion that the variances would not "do substantial justice,"[11] it held that substantial evidence supported the AZBA's findings that Pegasus failed to meet the three other requirements for a variance under the AZA.

Pegasus appealed the circuit court's decision. In a published decision, a divided Court of Appeals panel reversed the parts of the circuit court's opinion affirming the AZBA

---

[9] MCL 259.481 *et seq*.

[10] See MCL 259.454(1) ("The board of appeals shall allow a variance if a literal application or enforcement of the regulations [(1)] would result in practical difficulty or unnecessary hardship and the relief granted [(2)] would not be contrary to the public interest, but [(3)] would do substantial justice and [(4)] be in accordance with the spirit of the regulations.").

[11] *Id*.

4

and remanded the matter for further proceedings.[12]  The Court of Appeals conducted its own factual review, giving particular focus to whether the variances would be contrary to the public interest.[13]  Ultimately, the Court of Appeals concluded that Pegasus's proffered evidence refuted the evidence cited by the AZBA and that the addition of eight new turbines would not create additional risk to the airport.[14]

Judge MURRAY dissented.  Although he deemed this "a close case," he concluded that the deferential standard of review should lead to affirmance.[15]  Judge MURRAY conceded that there might be weaknesses in the factual foundations of the AZBA's decision, but he concluded that the record contained sufficient testimony and evidence to support the conclusion that the proposed new turbines would create additional risk for the airport.[16]  From the evidence presented, the AZBA could have reached either outcome, so Judge MURRAY found it impossible to attribute error to the AZBA's denials or the circuit court's affirmance.[17]

After the Court of Appeals' decision, the AZBA sought leave to appeal in this Court. We ordered oral argument on the application and directed the parties to file supplemental

---

[12] *Pegasus Wind*, 340 Mich App at 721, 756.

[13] See *id*. at 741-753.

[14] *Id*.

[15] *Id*. at 757-759 (MURRAY, J., dissenting).

[16] *Id*. at 757-758.

[17] *Id*. at 759.

briefing to address whether the Court of Appeals erred by holding that the AZBA's "decision was not supported by competent, material, and substantial evidence."[18]

## II. STANDARD OF REVIEW

When reviewing a decision of a zoning board of appeals, a circuit court's review is "limited to whether the decision is authorized by law and supported by competent, material, and substantial evidence on the whole record."[19] " 'Substantial evidence' is evidence that a reasonable person would accept as sufficient to support a conclusion. While this requires more than a scintilla of evidence, it may be substantially less than a preponderance."[20] The factual findings of a zoning board of appeals are entitled to deference.[21] "A court will not

---

[18] *Pegasus Wind, LLC v Tuscola Co*, 511 Mich 977, 978 (2023). We also ordered the parties to brief whether the Court of Appeals erred by holding that "the requirements of showing unique circumstances inherent in the property is only an element of unnecessary hardship, and not an element of practical difficulty" and that "the self-created hardship rule only applies when the applicant has partitioned, subdivided, or physically altered the property[.]" *Id*. at 977-978. Because we resolve this case on the substantial-evidence issue, we do not reach the other questions.

[19] *Dowerk*, 233 Mich App at 72. See also Const 1963, art 6, § 28. The whole record includes "both sides of the record" and "not just those portions of the record supporting the findings of the administrative agency." *In re Payne*, 444 Mich 679, 693; 514 NW2d 121 (1994) (opinion by BOYLE, J.) (quotation marks and citation omitted).

[20] *Dowerk*, 233 Mich App at 72. See *Consol Edison Co v Nat'l Labor Relations Bd*, 305 US 197, 229; 59 S Ct 206; 83 L Ed 126 (1938) ("Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.").

[21] *Hughes*, 284 Mich App at 60. While this Court has never addressed the extent to which an appellate court is required to defer to a circuit court's assessment of a zoning board's factual findings, neither party disputes that the appropriate standard of review is the one articulated by the Court of Appeals in *Hughes*.

6

set aside findings merely because alternative findings also could have been supported by substantial evidence on the record."[22]

This Court and the Court of Appeals review a circuit court's determinations regarding a zoning board of appeals' findings to assess whether the circuit court " 'applied correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test to the [zoning board of appeals'] factual findings.' "[23] Whether a circuit court "misapprehended or grossly misapplied the substantial evidence test" is reviewed under a standard identical with the "clearly erroneous" standard.[24] "A finding is clearly erroneous if the reviewing court, on the whole record, is left with the definite and firm conviction that a mistake has been made."[25]

### III. ANALYSIS

### A. VARIANCES UNDER THE AZA

The AZA governs zoning regulations near Michigan airports. The statute is primarily concerned with regulating "airport hazards."[26] An "airport hazard" is "any

---

[22] *Payne*, 444 Mich at 692 (opinion by BOYLE, J.). See *Arkansas v Oklahoma*, 503 US 91, 113; 112 S Ct 1046; 117 L Ed 2d 239 (1992) ("[A] court should not supplant [an] agency's findings merely by identifying alternative findings that could be supported by substantial evidence.").

[23] *Hughes*, 284 Mich App at 60, quoting *Boyd v Civil Serv Comm*, 220 Mich App 226, 234; 559 NW2d 342 (1996).

[24] *Hughes*, 284 Mich App at 60 (quotation marks and citation omitted).

[25] *Id*.

[26] See MCL 259.441 (declaring airport hazards to be public nuisances that should be prevented or eliminated).

structure or tree or use of land or of appurtenances thereof which obstructs the air space required for the safe flight of aircraft in landing or taking off at an airport or is otherwise hazardous or creates hazards to such safe landing or taking off of aircraft."[27]  A local political subdivision containing "an airport hazard area"[28] may adopt airport zoning regulations, including airport zoning ordinances.[29]  The AZA provides for the creation of boards of appeals to review the administration of airport zoning regulations.[30]

Among other duties, an airport zoning board of appeals—such as the AZBA here—is empowered to hear and decide requests for variances from local airport zoning ordinances.[31]  The AZA provision governing variances, MCL 259.454(1), states in relevant part:

> A person desiring to erect a structure, or increase the height of a structure, or permit the growth of a tree, or otherwise use property in violation of the airport zoning regulations adopted under this act, may apply to the board of appeals, for a variance from the zoning regulations in question.  The board of appeals shall allow a variance if a literal application or enforcement of the regulations would result in practical difficulty or unnecessary hardship and the relief granted would not be contrary to the public interest, but would do substantial justice and be in accordance with the spirit of the regulations.

---

[27] MCL 259.433.

[28] See MCL 259.434 ("The term 'airport hazard area'[] when used in this act means any area of land or water, or both, upon which an airport hazard might be established if not prevented as provided in this act, including any such area which has been declared to be an 'airport hazard area' by the Michigan aeronautics commission in connection with any airport approach plan adopted by said commission.").

[29] MCL 259.443.

[30] MCL 259.457; MCL 259.458.

[31] MCL 259.457(c).

Put another way, under MCL 259.454(1), there are four requirements that must be met to obtain a variance under the AZA: (1) a literal application or enforcement of the regulations would result in practical difficulty or unnecessary hardship; (2) the relief granted would not be contrary to the public interest; (3) the relief granted would do substantial justice; and (4) the relief granted would be in accordance with the spirit of the regulations. If an applicant satisfies the four criteria, the requested variance should be granted.[32] Conversely, if an applicant fails to show any one of the four criteria, the board of appeals is not required to grant the variance.[33]

## B. THE CIRCUIT COURT'S APPLICATION OF THE SUBSTANTIAL-EVIDENCE STANDARD TO THE AZBA'S PUBLIC-INTEREST FINDINGS

The AZBA held hearings over two days in January 2020. It heard testimony for and against the requested variances. At least two local pilots testified that the wind turbines would create additional risk for planes flying in and out of the airport. One pilot testified

---

[32] *Costa v Community Emergency Med Servs, Inc*, 475 Mich 403, 409; 716 NW2d 236 (2006) (noting that the Legislature's use of the word "shall" indicates a mandatory directive). Because this case does not present a situation in which a board found that all the elements under MCL 259.454(1) have been satisfied but nevertheless rejected the variance for other reasons, we need not specifically address whether a board is required to grant a variance when all the elements are met. Also, we note that the local ordinance in this case imposes an additional requirement for variance requests: the applicant must show that the variance "would not be contrary to the public interest *and approach protection*." Tuscola County Airport Zoning Ordinance, § 5.2(G)(2)(b) (emphasis added). Because we resolve this case on the basis of the AZBA's finding that a variance would be contrary to public interest, which is an element common to both the AZA and the local ordinance, we do not address whether a local zoning ordinance can impose a requirement that goes beyond the AZA.

[33] Because the list of criteria in MCL 259.454(1) is conjunctive, all four items must be satisfied to obtain a variance under the AZA. Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* (St. Paul: Thomson/West, 2012), p 116.

9

that pilots operating under visual flight rules (VFR) would have to circle around the turbines in limited-visibility conditions, possibly creating a choke point with aircraft operating under instrument flight rules (IFR) near the airport.[34] Another pilot expressed concern that the turbines would interfere with the airport's primary radar, which would limit the airport's ability to track VFR aircraft that are not equipped with transponders.

Pegasus presented studies conducted by the FAA concluding that the wind turbines "would have no substantial adverse effect on the safe and efficient utilization of the navigable airspace by aircraft or on the operation of air navigation facilities." The FAA also found that the turbines would require a 300-foot increase in minimum descent altitude. Pegasus offered expert testimony that VFR pilots have historically chosen not to fly near the airport during periods of low visibility, arguing that any risk posed by the turbines would therefore be minimized.

In finding that a grant of the requested variances would be contrary to the public interest, the AZBA concluded that the wind turbines would pose a danger to pilots during in-flight emergencies; that VFR pilots would be unable to comply with visibility, cloud-clearance, and minimum altitude regulations during low-visibility periods, leading to a potential choke point and conflict with IFR aircraft; that the 300-foot increase in minimum descent altitude would create additional difficulty and risk for aircraft attempting a certain type of landing; and that the turbines' impact on the airport's primary radar would interfere with the airport's ability to locate aircraft not equipped with transponders or similar technology.

---

[34] The record reflects that about 85% of flights in and out of the Tuscola Area Airport operate under VFR.

The circuit court concluded that these findings were supported by competent, material, and substantial evidence in the record. First, the circuit court pointed to evidence from Pegasus's expert that the FAA defines a "hazard" as a situation in which an "adverse effect" exceeds one operation per day or 365 operations per year. Second, the circuit court noted that the FAA had found that the turbines would require a 300-foot increase in minimum descent altitude. Although this increase would not pose a risk to most flight approaches, especially with current technology preferred by the FAA, the AZBA reasonably found that the increased minimum descent altitude would create danger for a certain type of approach technique.[35] Finally, the circuit court identified the comments from local pilots as supporting many of the AZBA's conclusions, including that the turbines would pose a hazard to VFR pilots in reduced visibility conditions by creating a choke point near the airport and that the turbines would impact the airport's ability to track VFR aircraft not equipped with transponders.

## C. THE CIRCUIT COURT DID NOT ERR BY AFFIRMING THE AZBA'S DECISION

We do not agree with the Court of Appeals' conclusion that the circuit court clearly erred by affirming the AZBA's findings. The factual findings of a zoning board of appeals

---

[35] The AZBA identified this approach technique as "VOR/DME-A." VOR stands for "very high frequency visual omnirange," and DME stands for "distance measuring equipment." Comment, *Managing Air Traffic Congestion Through the Next Generation Air Transportation System: Satellite-Based Technology, Trajectories, and—Privatization?*, 37 Pepp L Rev 247, 258 n 50 (2010). In a VOR system, a ground-based station emits signals to an approaching aircraft, and a receiver aboard the aircraft then translates the signals into the bearing in which the aircraft should head. *Id*. at 267-268. The AZBA acknowledged that "the VOR/DME-A approach is not frequently used" but noted that "not all IFR certified aircraft are equipped to conduct the more precise approaches preferred by the FAA."

11

are entitled to deference.[36] And we cannot say that the circuit court "misapprehended or grossly misapplied the substantial evidence test" to the AZBA's factual findings.[37]

The circuit court properly stated the substantial-evidence standard. It then examined the evidence upon which the AZBA relied. From this, the circuit court concluded that the evidence was competent, material, and substantial and that it supported the AZBA's findings. Indeed, the record contained evidence that the wind turbines could cause dangers to pilots experiencing in-flight emergencies, that the need to avoid the turbines might create a choke point for pilots flying under VFR restrictions, that the increased minimum descent altitude created a danger for a certain type of approach, and that the turbines would cause interference with the airport's primary radar. The circuit court's decision also shows that it considered evidence contrary to the AZBA's ultimate decision, including the FAA studies offered by Pegasus.[38]

The circuit court's examination of the evidence could have been clearer and more comprehensive. Nonetheless, under the deferential standard of review applied by a circuit court to a zoning board of appeal's factual findings, we are not "left with the definite and

---

[36] *Hughes*, 284 Mich App at 60; *Dowerk*, 233 Mich App at 72; *Davenport v Grosse Pointe Farms Bd of Zoning Appeals*, 210 Mich App 400, 406-407; 534 NW2d 143 (1995) (upholding a zoning decision denying a variance request partly because the decision "was not without any evidentiary support").

[37] *Hughes*, 284 Mich App at 60.

[38] See *Payne*, 444 Mich at 693 (opinion by BOYLE, J.) (instructing that the circuit court must consider "both sides of the record" and "not just those portions of the record supporting the findings of the administrative agency") (quotation marks and citation omitted).

firm conviction" that the circuit court erred.[39]  Again, the necessary quantum under the

substantial-evidence test is not high—more than a scintilla, but less than a preponderance.[40]

In more colloquial terms, this is "the amount of evidence that a reasonable mind would

accept as sufficient to support a conclusion."[41]

The Court of Appeals majority opinion, though, went beyond the question of

whether the circuit court properly applied the substantial-evidence test.  Instead, noting that

"the substantial-evidence test includes a qualitative component,"[42] the Court of Appeals

weighed the evidence anew, essentially making its own factual findings.  It found the

evidence supporting Pegasus's position more persuasive than the evidence relied on by the

AZBA.  Although the Court of Appeals styled its holding as a conclusion that substantial

evidence did not support the AZBA's findings, that is not an accurate description of what

amounted to a de novo analysis on the part of the Court of Appeals.

---

[39] *Hughes*, 284 Mich App at 60.

[40] *Dowerk*, 233 Mich App at 72.

[41] *Payne*, 444 Mich at 692 (opinion by BOYLE, J.).

[42] *Pegasus Wind*, 340 Mich App at 746 (opinion of the Court), citing *Hughes*, 284 Mich App at 61.  This Court has previously stated that there is a qualitative component to substantial-evidence review.  See *Payne*, 444 Mich at 693 (opinion by BOYLE, J.), quoting *Mich Employment Relations Comm v Detroit Symphony Orchestra, Inc*, 393 Mich 116, 124; 223 NW2d 283 (1974).  These statements in *Payne* and *Detroit Symphony Orchestra*, however, came in the context of acknowledging and appropriately deferring to the subject-matter expertise of agencies charged by the Legislature with making technical decisions. See *Detroit Symphony Orchestra*, 393 Mich at 124 (stating that substantial-evidence review is not de novo, but "it necessarily entails a degree of qualitative and quantitative evaluation of evidence considered by an agency.  Such review must be undertaken with considerable sensitivity in order that the courts accord due deference to administrative expertise and not invade the province of exclusive administrative fact-finding by displacing an agency's choice between two reasonably differing views").

13

For example, the Court of Appeals majority disregarded evidence that the turbines would create additional risks for VFR pilots flying in limited-visibility conditions and, in fact, would prevent VFR pilots from flying in certain conditions.[43] The Court of Appeals relied on testimony from Pegasus's expert that VFR pilots have historically not flown in such conditions. From this, the Court concluded that the safety concerns were unrealistic and that any loss of allowable flight time for VFR pilots was "meaningless."[44] Because the expert's evidence contradicted the evidence on which the AZBA relied, and because the Court of Appeals majority found the expert's evidence more compelling, the majority held that the AZBA's cited evidence was not substantial evidence.

Not only was this improper fact-finding by the Court, but the logic is flawed. Even if VFR pilots have not historically flown at the Tuscola Area Airport during specific low-visibility conditions, that does not mean that an impaired ability to do so in the future is not a germane concern for the airport. True, evidence that VFR pilots typically do not fly at the airport when visibility is bad lessens the significance of evidence that the turbines create risk for those pilots in low-visibility conditions. But the risk persists to some degree, so the AZBA and the circuit court did not clearly err by considering evidence of that risk.

Similarly, the Court of Appeals relied heavily on the fact that there are already at least 33 wind turbines near the airport.[45] The Court of Appeals concluded that the eight proposed wind turbines would not impact VFR pilots or create potential choke points

---

[43] *Pegasus Wind*, 340 Mich App at 747, 750 (opinion of the Court).

[44] *Id*.

[45] *Id*. at 751-752. At oral argument in this Court, counsel for Pegasus asserted that its wind farm currently includes 52 turbines near the airport.

14

because any such effect would already be in place.[46]  Again, this is a credible argument undercutting the persuasive power of the evidence that the eight proposed wind turbines would create danger for VFR pilots in low visibility or create a hazardous choke point near the airport.  But again, the Court of Appeals did not look to whether substantial evidence supported the AZBA's decision or whether the circuit court properly applied the standard of review.  Instead, it considered the evidence anew and reached the decision it thought the evidence best supported.  That the Court of Appeals couched its decision in terms of substantial-evidence review does not change the nature of its analysis.

The Court of Appeals majority also relied on certain of the FAA findings.  It is undisputed that, according to the FAA's findings, the turbines would increase the minimum descent altitude by 300 feet.  The record contains testimony stating that the increased altitude creates risks, at least for any aircraft using the VOR/DME-A approach.  The Court of Appeals majority did not squarely address that risk.  But when dismissing the risk posed by emergencies, the Court of Appeals relied on Pegasus's expert, who opined that " '[t]he FAA does not protect for emergencies for the very reason that they are unpredictable. . . . So . . . to me, the safety argument here, there is no safety argument, because the FAA has addressed that.' "[47]  The Court of Appeals did not provide any explanation for why it was error for the AZBA and the circuit court to consider that risk, even if the FAA did not.  Similarly, while the FAA made a "determination of no hazard" based on the FAA's specific

---

[46] *Id.*

[47] *Id.* at 749.

15

definition of "hazard," the Court of Appeals did not provide any reason why the AZBA would be unable to use a different definition.[48]

Altogether, the Court of Appeals identified evidence contrary to the evidence on which the AZBA relied and declared the contrary evidence dispositive. This was inappropriate. Although there is a qualitative element to the substantial-evidence test, an appellate court may not conduct the equivalent of de novo review of the facts.[49]

To be sure, the Court of Appeals identified vulnerabilities in the evidence on which the AZBA relied. Pegasus's position is not without merit, and the AZBA could reasonably have decided that the variances were not contrary to the public interest. As Judge MURRAY noted below, even under the deferential substantial-evidence standard, this is a "close case."[50] Nevertheless, there remains evidence in the record—though contested by Pegasus—that supported the AZBA's finding that Pegasus failed to show that the variances "would not be contrary to the public interest[.]"[51] After reviewing the record, we cannot say that the circuit court clearly erred by deeming this evidence more than a mere "scintilla" and enough to make the AZBA's conclusion reasonable.[52]

---

[48] As noted by the circuit court, the record suggests that the FAA defines a "hazard" as a situation in which an "adverse effect" exceeds one operation per day or 365 operations per year. We see no reason why the FAA's determinations of "no hazard" would necessarily preclude the AZBA from applying a stricter definition of "hazard" and finding that the wind turbines would pose a hazard under the AZA and the local airport zoning ordinance.

[49] *Payne*, 444 Mich at 693 (opinion by BOYLE, J.).

[50] See *Pegasus Wind*, 340 Mich App at 757 (MURRAY, J., dissenting).

[51] MCL 259.454.

[52] See *Dowerk*, 233 Mich App at 72. See also *Davenport*, 210 Mich App at 406-407.

16

## IV. CONCLUSION

Because we conclude that the circuit court did not clearly err in affirming the AZBA's finding that Pegasus failed to show that the requested variances would not be contrary to the public interest, we reverse the part of the Court of Appeals opinion addressing that matter. And because the AZBA's finding that the variances would be contrary to the public interest means that Pegasus is not entitled to the variances,[53] we reinstate the AZBA's denial of the variances. Finally, we vacate the remainder of the Court of Appeals opinion because it is not necessary to the disposition of this case.

> Brian K. Zahra
> Elizabeth T. Clement
> David F. Viviano
> Richard H. Bernstein
> Megan K. Cavanagh
> Elizabeth M. Welch

---

[53] See MCL 259.454. See also note 33 of this opinion.

17

# S T A T E   O F   M I C H I G A N

# SUPREME COURT

PEGASUS WIND, LLC,

      Plaintiff-Appellee,

v                                              No. 164261

TUSCOLA COUNTY,

      Defendant-Appellee,

and

TUSCOLA AREA AIRPORT ZONING
BOARD OF APPEALS,

      Intervenor-Appellant.

---

BOLDEN, J. (*dissenting*).

    I respectfully dissent. This Court now holds that the Court of Appeals applied the incorrect legal standard in this case because the nature and scope of the evidentiary review in that Court's majority opinion exceeded the Court's appellate role. I disagree. Rather, in my view, the Court of Appeals majority reviewed the entire record, applied the proper analysis, and correctly concluded that the findings of the Tuscola Area Airport Zoning Board of Appeals were not supported by substantial, competent, and material evidence. To me, the Court of Appeals majority opinion is well-reasoned and supported by the whole record. I would have denied the board's application for leave to appeal.

                                                      Kyra H. Bolden